## DURRETT v. UNEMPLOYMENT RELIEF COMMITTEE et al.
### No. 1262.

Court of Appeal of Louisiana. First Circuit.
Jan. 22, 1934.

Frank T. Doyle, of New Orleans, and C. V. Pattison, of Lake Charles, for appellants.

S. I. Foster, of Leesville, for appellee.

LE BLANC, Judge.

Plaintiff, David W. Durrett, was placed on the roll of work relief cases by the Vernon parish director of the unemployment relief committee of the state of Louisiana. This unemployment committee was an agency set up in each state under the direction of the United States government to give work to unemployed people who had been self-supporting before, in an effort to afford some relief from the depressing economic situation existing throughout the country. The plan under which it operated was to have people register in each parish. The case was then investigated by field workers, and, if the applicant was found to come within the requirements, he was approved for work relief and placed on the roll for so many days' work per week at $1.50 per day. The number of days' work he was given was fixed so as to provide sufficient wages at the price he was paid with which he could meet his weekly food budget. The number of days allotted to each depended of course on the size of the family or the number of dependents in each case. The maximum allowed any one however was four days per week. The funds with which the committee operated were provided for by the Reconstruction Finance Corporation. The unemployment relief committee originated in Louisiana by proclamation of the Governor on January 10, 1933. Later, on May 1, 1933, by subsequent proclamation, the unemployment relief committee was superseded by the emergency relief administration of the state of Louisiana, which, as we understand, had the same purpose and performed the same functions.

Durrett, the plaintiff, was allotted two days' work per week on the public roads of Vernon parish, and, under the rules and regulations of the committee, he was paid $1.50 at the end of each working day that he worked. He claims that on April 4, 1933, while at work lifting a heavy piece of timber, he ruptured himself and sustained a hernia of the lower abdomen, and that as a result thereof he is totally incapacitated from performing his duties, and therefore entitled to recover compensation. In accordance with proclamation of the Governor and with the rules and regulations of the unemployment relief committee prescribing therefor, compensation insurance had been taken by the committee with the Zurich General Accident & Liability Insurance Company, Limited. On refusal of the relief committee and the insurance company to pay him, plaintiff instituted this suit against them both praying for compensation at the rate of $5.85 per week for the period of 400 weeks. The rate of compensation demanded is based on the daily rate of pay he received calculated on a six-day work week. In addition, plaintiff prays that the fee of his attorney be fixed by the judgment of court, and that the fees of the expert witnesses be taxed as costs.

The defendants filed certain exceptions which were not acted on by the lower court until its final disposition of the merits of the case which resulted in a judgment in favor of plaintiff against both defendants in which he was awarded compensation at the minimum rate of $3 per week not to exceed 400 weeks and fixing the fee of his attorney at 20 per cent. of the amount of the judgment. Both defendants have appealed. Plaintiff has answered the appeal asking for an increase in the rate of compensation to the amount originally prayed for by him.

The unemployment relief committee made no appearance in this court, neither did its successor, the emergency relief administration. Exceptions filed on behalf of the former were overruled by the trial judge, and, counsel having failed to present them before this court either in oral argument or by brief, we take it that they have been abandoned. In one of these exceptions, however, the unemployment relief committee had been joined by the Zurich General Accident &. Liability Insurance Company, Limited, and, as the latter defendant is urging it, it is necessary for us to pass on it. It is an exception of no right of action in which it is contended that the allegation of plaintiff's petition referring to his demand for compensation and the employer's refusal to pay does not conform to the requirements of the statute. It is urged that an allegation following in substance the language of the statute is sacramental, and in its absence the action is premature and should be dismissed.

Section 18 of the Compensation Statute, subsection (1) (b), as amended by Act No. 85 of 1926, provides that: "Unless in the verified complaint above referred to it is alleged (where the complaint is filed by the employee or his dependents) that the employee or the dependent is not being or has not been paid, and that the employer has refused to pay, the maximum per centum of wages to which petitioner is entitled under the provisions of this act, the presentation of filing of such complaint shall be premature and shall be dismissed. * * *"

After setting out the nature and character of his employment and the fact that, under the proclamation of the Governor, the unemployment relief committee was directed to protect its workmen by Workmen's Compensation Insurance, according to the laws of Louisiana, and that, in formulating its rules and regulations, the committee did provide that all its workmen should be covered by such insurance, and, further, that it did take out such insurance with Zurich General Accident & Liability Insurance Company, Limited, plaintiff alleges that, as a result of the injury which he sustained while at work, "he is totally incapacitated," and that "he claims sixty-five per cent of his daily wage for a period of four hundred weeks. * * *" In paragraph 12 of his petition, he then makes the following allegation: "Petitioner would show that he has, through his attorney, served notice of his injury, and demanded settlement, upon the Unemployment Relief Committee of the State of Louisiana, and upon the Zurich General Accident and Liability Insurance Company, Ltd., to no avail."

In the light of the preceding allegations which can leave no doubt as to the exact nature of the claim, it would be difficult to construe this last averment referring to a demand for settlement as being any other than an allegation that the settlement demanded was for the maximum per centum of wages to which plaintiff was entitled under the Compensation Law, and the further averment that the demand was "to no avail" as anything else than an allegation that he had not been paid, and that his employer and its indemnitor refused to pay him. Whilst the allegation does not follow the precise language of the statute, there is no doubt a substantial compliance with its provisions, and this is all that is required. It is well established that pleadings under the Compensation Statute should be liberally construed. The exception, in our opinion, was properly overruled.

On the merits, the principal defense is that plaintiff did not sustain an accident within the meaning of the Compensation Law. On trial of the case, testimony was adduced to show that plaintiff's trouble could be relieved within sixty or ninety days by having him undergo a minor operation, and it is now further urged that he should be made to submit to such operation in the event it be found that he suffered a hernia as a result of

the accident he claims happened while working.

Plaintiff, a man of fifty-five years, was engaged in clearing the right of way along the highway. His particular task on the afternoon he claims to have been injured was to remove stumps along the right of way and carry them to a fire where they were burned. He says that he was injured while picking up a piece of log to put on a burning stump. He felt a sharp, stinging pain in the lower abdomen, on the right side, and remarked to the two men working with him that he had hurt himself. This was about 2:30 in the afternoon. He had no way of getting home until a conveyance came for them, but he did very little after that. He is not positive, but believes that they stopped work about 3:20, which would have been less than an hour after he claims to have been injured. His two fellow workmen, J. M. Deramus and Fred Robinson, both testify that they saw him lift the log and experience some sort of discomfort or pain as he did so, and that he told them right after that he thought he had hurt or ruptured himself. When he reached his home, he found a protrusion on examination which confirmed his suspicion that he had sustained a hernia. Two days afterwards, he was examined by Dr. Brown Word, who testifies that he found an incomplete inguinal hernia on the right side, and that he advised him that an operation was the only cure for such a condition. Plaintiff is shown to have been in good health before he suffered the time he claims to have sustained this hernia, and there is not any testimony in the record, not even a suggestion, that he was suffering with it before. The stump he was lifting is said to have been seven or eight feet long, measured five or six inches in diameter and weighed about seventy-five pounds. It no doubt required a bit of straining to lift an object of that size and weight, and there is expert medical testimony in the record to the effect that such a strain could have produced a hernia. The district judge was of the absolute opinion that plaintiff had sustained the hernia at the time and in the manner stated, and it has not been pointed out to us that he committed manifest error in so concluding.

■ Regarding the contention of counsel for the defendant that plaintiff's disability as a result of the hernia could be relieved by an operation, we do find the experts agreeing that in their opinion such an operation would not be serious or accompanied by much danger. Nevertheless, the plaintiff, for reasons of his own, and which impress us as being fair, is apprehensive about taking such a chance, and it is very doubtful that the court has the power to force him to undergo the risk. In O'Donnell v. Fortuna Oil Co., 2 La. App. 462, the court has this to say regarding the question of relief by operation: "True, the surgeon's knife might easily relieve the patient of his burden, but who has the right to say to him that he must undergo an operation, fraught as operations always are with more or less danger?"

In James v. Hillyer-Deutsch-Edwards, Inc., 15 La. App. 71, 130 So. 257, this court held that an injured employee is not required to undergo an operation in order to recover compensation. See, also, Huval v. Sexton Corporation, 19 La. App. 198, 139 So. 739. On the authority cited we conclude that plaintiff's refusal in this instance to submit to an operation does not constitute a bar to his recovery.

This brings us now to the last issue presented in the case, and that is the one regarding the rate of compensation which plaintiff is entitled to receive.

■■ In describing the manner in which the relief committee operated, we stated that the maximum amount of work any employee could get was four days per week. Obviously, therefore, there could be no such thing as a six-day work week for any of them. It was also stated that the plaintiff was approved as a work relief case and given two days' work per week at $1.50. That he was limited to that number of days, he admits himself. His counsel contends however that, as he was paid off at the end of each working day, $1.50 was his daily wage, and that, as the rate of compensation is based on the daily wage and not on the average earnings, plaintiff is entitled to recover at the rate of 65 per cent. of his average daily wage for six days. In support of his contention, counsel cites the case of Rylander v. T. Smith & Son, 177 La. 716, 149 So. 434. We do not construe that decision to hold that an employee's right to recover compensation at a rate based on his daily wage for a six-day work week is absolute under any and all circumstances. We believe that his right to recover on that basis exists only where there is no agreement limiting the number of days per week he is engaged to work. That is the way in which we read the statute on this important point. It specifically defines the term "wages" as being "the daily rate of pay at which the service rendered by the injured employee is recompensed *under the contract of hiring in force at the time of the injury.*" (Italics ours.) See amendments to section 8 of the Compensation Statute by Act No. 216 of 1924 and Act No. 242 of 1928. Here the contract of hiring or the agreement under which plaintiff went to work, as testified to by the relief director of Vernon parish and the field worker who investigated his case, and as also admitted by him, was that he could get only two days' work per week. The director testified that, if one of their workers obtained enough work outside of what they gave him to cover his food budget, he was no longer eligible for relief. Plaintiff had no outside work, and his pay as a relief worker was all that he received in the way of wages. The testimony of

all those connected with the relief committee shows under what restrictions they had to operate. The relief afforded had no doubt to be exercised under such restrictions so as to best conserve the funds that were being spent in the interest of the unemployed and destitute. There was good reason therefore for a perfect understanding between the committee, which was the employer, and the employee, as to how many days' work he would get, and, when the employee accepted the employment under those conditions, there resulted "the contract of hiring" between them. The contract in force at the time plaintiff herein was injured stipulated only two days' work per week at $1.50 per day. Based on that wage, he of course is limited to the minimum amount of compensation allowed under the statute which is $3 per week, and which the district judge correctly awarded him for a period of not exceeding 400 weeks.

We find the judgment appealed from correct in all respects, and it is therefore affirmed.