## SUIRE v. UNION SULPHUR CO. et al.
### No. 1331.

Court of Appeal of Louisiana. First Circuit.
June 11, 1934.

518

Lewis & Williamson and C. R. Liskow, all of Lake Charles, for appellants.

Hawkins & Pickrel, of Lake Charles, for appellee.

ELLIOTT, Judge.

Mrs. Camelia Suire, acting individually and for herself and for the use and benefit of her minor child, Joseph Dewey Suire, brought suit against Union Sulphur Company and United States Casualty Company claiming compensation of the said defendants on account of the death of Pierre Suire, her husband and father of her child. Pierre Suire lost his life November 10, 1933, as a result of accidental drowning while in the employ of Union Sulphur Company. The liability of United States Casualty Company is that of insurance carrier for Union Sulphur Company.

She alleges that at the time of his death he was earning 48 cents an hour, working 8 hours a day, which figured on a 6-day basis amounted to a weekly wage of $23.64, 46¼ per cent. of which is $10.66, which amount she claims under the Employers' Liability Act of this state (Act No. 20 of 1914, as amended) for 300 weeks; a total of $3,198.

Defendant admits plaintiff's right to compensation, but the method whereby plaintiff would compute the time for which she is entitled to be paid on account of her husband's employment and the amount due her on said account is disputed.

Defendant alleges: That plaintiff's husband was employed under the Code of Fair Competition for the Petroleum Industry adopted under the provisions, section 1, of the National Industrial Recovery Act of Congress approved June 16, 1933 (15 USCA § 701), clauses (1) and (2) of section 3 of said Code; that accordingly he was being paid 48 cents an hour and was employed 8 hours a day and 4½ days a week; that his weekly pay was therefore $17.28, 46¼ per cent. of which is $7.99; that plaintiff is entitled to compensation at this rate for 300 weeks, a total of $2,397.

The difference between the amount claimed by the plaintiff and that conceded to be due by the defendant is $801.

The case was submitted to the district court on an agreed statement of facts. The district judge acting thereon, giving written reasons, rendered judgment in favor of the plaintiff as prayed for. Defendant has appealed. The district judge reviewed decisions of this court and of the other Courts of Appeal and of the Supreme Court. His conclusion was that the National Industrial Recovery Act and the Code of Fair Competition for the Petroleum Industry had not made any change in the Employers' Liability Act, under which the daily rate of pay based on a 6-day week was the intendment of the act, as held in Rylander v. T. Smith & Son, Inc., 177 La. 716, 149 So. 434, 435, and fixed plaintiff's compensation accordingly. The contention of the plaintiff cannot be better stated than was done by the learned judge a quo in his reasons for judgment. His reasons help in understanding the legal situation. We therefore copy from his opinion as follows:

"At the time of deceased's employment and ever since then, the United Sulphur Company has operated under the 'Code of Fair Competition for the Petroleum Industry' duly approved by the President. This Code prohibited the Company from employing the deceased or any other person engaged in the work, for more than 36 hours per week, or at a wage less than 48 cents per hour. * * *

"It is true as contended by the defendants, that the law as applied to the deceased Suire in this case, fixed the maximum number of hours he could work each week, and hence he could work no more than four and a half eight hour days in any one week. A valid contract as to the parties has the force of law and there is little if any difference in principle in a case where the employer and employee fixed the number of working days per week, and a case where the number is fixed by a temporary law.

"The Recovery Act, title 1, Industrial Recovery, section 2 (15 USCA § 702), providing for Industrial Codes, such as applies in this case, is, according to its own terms, mere emergency and temporary legislation and was enacted because of the unusual economic conditions then existing. It was adopted June 16th, 1933 and expires at the expiration of 2 years, unless repealed sooner by Congress or by proclamation of the President. At the latest the Act expires in 16 months from this time and can be repealed at any time.

"In the Rylander Case mentioned above the court quoted with approval the following from King v. American Tank & Equipment

Corp. (La. App.) 144 So. 283, 289. Under defendant's contention (to the contrary) one injured while working only 1, 2 or 3 days a week, due to unusual economic conditions, should only be allowed compensation at 65% of his daily wage, based upon the number of days then employed, although he has become totally disabled and will never be able to work again, when if he had not been injured he could possibly have secured employment for 6 days a week in the near future. The accident and injury have deprived him of the ability to work in the future, when he could secure full time employment." .

The reasons for holding that an injured employee working but 3 or 4 days a week, due to unusual economic conditions, is entitled to compensation at 6 times his daily wage, are equally applicable to a case where, due to unusual economic conditions creating an emergency, Congress enacts temporary legislation which will be in effect less than one-third of the time compensation is to run in this case, limiting in effect the number of 8-hour days an employee can work in a particular industry.

The Recovery Act expires in about 65 weeks from this date, while the weekly compensation payments due the plaintiff run for about 287 weeks from this date, or for 222 weeks after the act in question is no longer in effect.

If by a general custom, legislative enactment or federal law, the working week is fixed at 4½ or 5 days, then of course compensation will be based upon 4½ or 5 times the daily wage.

Federal legislation resulting from unusual and temporary economic emergency, having for its purpose the alleviation of the evils of that emergency by limiting the number of working hours per week, cannot be said to fix the number of working days per week under our compensation statutes, where such federal law is by its terms to be in force less than one-third of the period during which compensation is to be paid, under our law.

Compensation is based on daily wages, as daily earning capacity. Temporary economic depression and temporary legislation enacted because of such depression, resulting in fewer than 6 working days per week, is not a proper measure of daily earning capacity.

The Legislature, in providing for compensation based on daily earning capacity, had in mind earning capacity under normal economic conditions which will provide full-time employment. This is evidenced by the change which the lawmakers effected in substituting the daily wage for the average weekly wage as a basis for compensation."

The opinion proceeds, quoting the opinion of Judge Cline in the case of Rankin v. Zurich General Accident and Liability Insurance Company, No. 17162 on the docket of the district court, in which Judge Cline, reasoning along the same line, holds that a 6-day week is intended by our Employers' Liability Act, and must be used for the purpose of fixing compensation under the Act.

It will be seen from the opinion, however, that the lower court entertained the view that: "If by a general custom Legislative enactment or Federal law, the working week is fixed at 4½ or 5 days, then of course compensation will be based upon 4½ or 5 times the daily wage."

In Rylander v. T. Smith & Son, Inc., the Supreme Court, quoting from King v. American Tank & Equipment Corp. (La. App.) 144 So. 283, 289, and commencing with the statement, "Under defendant's contention (to the contrary), one injured while working only one, two, or three days a week," etc., says with reference thereto: "This was correct. The workmen's compensation statute is not a statute allowing the workman damages for injuries sustained in the course of his employment even through the negligence or fault of his employer. It is essentially insurance against the loss or diminution of earning capacity," etc.

In King v. American Tank & Equipment Corp., the opinion, in addition to the language quoted, subsequently goes on to say: "To hold to defendant's theory would be to penalize the injured employee, because of unfortunate economic conditions prevailing at the time of injury with no right in the future to remove the penalty, should economic conditions become better. This, no doubt, was the reason of the change in the law, from the average weekly wage to daily wage, and when the law reads to be paid weekly, based upon his daily wage, it means that his daily wage shall be multiplied by the number of working days in the week, which is generally understood at the present time to be six. If the five-day working week ever becomes a law, it no doubt will then govern."

As thus seen, the Court of Appeal entertained the opinion that: "If the five-day working week ever becomes a law, it no doubt will then govern."

Applying the paramount law in force and governing at the time plaintiff's husband, Pierre Suire, was hired, we find that

at the time when he was hired, during all the time he was employed, and at the time he lost his life, the law absolutely provided that he could not be hired, could not work and was not allowed to work, except for 48 cents an hour, 8 hours a day, and 4½ days a week.

At the time the decision of the Supreme Court in Rylander v. T. Smith & Son, Inc. and that of the Court of Appeal in the King Case was handed down, this act of Congress and the Code of Fair Competition for the Petroleum Industry based thereon had not been adopted and was not the law, nor had the state agency known as the unemployment relief committee been organized, consequently the legal situation thereby created was not considered in said cases. But the lower court holds that no change in the matter of compensation results therefrom. As truly said by the lower court, the Employers' Liability Act, in providing for a daily wage, contemplated normal times and an earning capacity based on normal economic conditions, which supposed full-time employment, that is, work for 6 days a week. So we say the normal situation justified lower wages per hour and per day, a longer day's work, and 6 days work a week. We therefore conclude that previous to the act of Congress an employer and employee must be supposed to have both had in mind a 6-day working week at the time of the contract of hiring and employment. But that cannot be supposed, when the employee and employer both must be charged with knowing that at the time of the hiring and during all the time of the employment, and at the time the decedent in this case lost his life, he was employed under the provisions of a law mandatory as to the employer and employee in the requirement that the employee be paid for his work 48 cents an hour, fixed an 8-hour day, and a 4½-day week, and prohibiting work, under any other terms.

In this connection it is perhaps well for us to take notice of our opinion in Durrett v. Unemployment Relief Committee, 152 So. 138, 140. In that case, acting on the regulations which governed employment under the unemployment relief committee, we said, in describing the manner in which the committee operated: "That the maximum amount of work any employee could get was four days per week. Obviously, therefore, there could be no such thing as a six-day work week for any of them. It was also stated that the plaintiff was approved as a work relief case and given two days' work per week at $1.50. That he was limited to that number of days, he admits himself. His counsel contends however that, as he was paid off at the end of each working day, $1.50 was his daily wage, and that, as the rate of compensation is based on the daily wage and not on the average earnings, plaintiff is entitled to recover at the rate of 65 per cent. of his average daily wage for six days. In support of his contention counsel cites the case of Rylander v. T. Smith & Son, 177 La. 716, 149 So. 434. We do not construe that decision to hold that an employee's right to recover compensation at a rate based on his daily wage for a six-day work week is absolute under any and all circumstances. We believe that his right to recover on that basis exists only where there is no agreement limiting the number of days per week he is engaged to work. That is the way in which we read the statute on this important point. It specifically defines the term 'wages' as being 'the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury.'"

And later in the same opinion: "The testimony of all those connected with the relief committee shows under what restrictions they had to operate. The relief afforded had no doubt to be exercised under such restrictions so as to best conserve the funds that were being spent in the interest of the unemployed and destitute. There was good reason therefore for a perfect understanding between the committee, which was the employer, and the employee, as to how many days' work he would get, and, when the employee accepted the employment under those conditions, there resulted 'the contract of hiring' between them."

Acting on the situation, we considered that it was, under the contract of hiring, fair and right to take the daily rate of pay with the number of days the party had worked under the contract during the week as a basis for computing the amount due him as compensation.

In the case of Young v. Unemployment Relief Administration, 154 So. 642, recently decided and not yet reported [in State reports], we held, in a like situation, the same as had been done in the Durrett Case.

In the present case, the hiring and employment comes under the terms and provisions of the Code of Fair Competition for the Petroleum Industry. When Pierre Suire applied for work and was hired, employer and employee both knew what he was to be paid for his work. They both knew that the paramount law had provided that he should be paid 48 cents an hour for an 8-hour day, and

a 4½-day week, and that the law prohibited employment under any other terms. So we have, we think, a working rule not contemplated in Rylander v. T. Smith & Son, which otherwise would be controlling, but a situation requiring a ruling that 4½ days makes a working week, instead of 6 days, as would have been the case had the National Industrial Recovery Act not been passed.

As heretofore stated, the Employers' Liability Act, in providing for compensation based on daily wages and a 6-day week, had in mind earning capacity under normal economic conditions, although at the time of the injury the industry may not have been operating more than 2 or 3 days a week. And as stated in the Rylander Case, the statutory purpose was not to provide damages for injuries sustained, but rather insurance against loss or diminution of earning capacity. Such a purpose has reference to a man's ability to do work.

But the situation which led to the enactment of the National Industrial Recovery Act is set forth in section 1 of the Act (15 USCA § 701). It was not man's ability to do work, but rather his inability to get work that moved to the adoption of the act. His loss of earning capacity was due to the lack of work, and the legislation has in mind to provide work for more men by a greater hourly pay, shortening the number of hours which ordinarily make a working day, and the number of days which ordinarily make a working week. The idea is to enable more people to get work. These 8-hour working days made it possible for one crew, if the exigencies of the work was sufficient, to work 8 hours, then another crew to work 8 hours, and, if the business would stand it, still another could work another 8 hours, thus making up the 24 hours.

Now it does not appear to us that Congress, after imposing on the employer the burden of what amounted to double pay and sometimes more than that, had in mind as a further and additional burden, in case of injury to an employee, the payment of compensation as if he had worked 6 days a week, when he in fact had worked but 4½ days.

Business would be so heavily laden that, instead of being activated, the tendency would be to shut down, and in that case the purpose of the law, and the idea of the plan would be defeated.

In the present case the employer had no voice in fixing the increased amount it is compelled to pay per hour, nor the fewer number of hours which the decedent or any other employee could be worked during the day, nor the fewer number of days to be counted as a week's work, therefore a holding that when injury occurs, under the law it must arbitrarily pay compensation based on a longer period of time than was actually worked under the mandate of the law, we take to be contrary to the intent of the act of Congress in its application to the contract of hiring in force at the time of the injury.

We find that the compensation of a party injured while employed in the petroleum industry is to be found by taking the daily wage and using as a basis a 4½-day week, as provided for in the code on that subject.

We have considered the fact that the act of Congress is not intended to be permanent, that it is emergency legislation temporary in its idea, and may by proclamation of the President or act of Congress be terminated any time, as provided for in section 2, subsection (c) of the Act (15 USCA § 702 (c). We have no way of finding out what may take place, but the law as in force at the time Pierre Suire sought employment under the code, at the time he was hired, during the time he was employed, and at the time he lost his life, should have the effect it was intended to have, without going further and giving it an effect, in the matter of the payment of compensation, which seems to be not in harmony with the congressional plan on the subject of employment.

For these reasons the judgment appealed from is corrected and amended. The compensation of Mrs. Camelia Suire individually and as tutrix on account of the death of Pierre Suire, her husband and the father of her minor child, Dewey Suire, is accordingly fixed at $7.99 per week for 300 weeks, and, as thus corrected and amended, the judgment appealed from is affirmed.

No tender of the amount due having been made by appellant, the defendant, appellant will be required to pay the cost in the lower court and plaintiff, appellee, the cost of appeal.