## Weaver *v.* Wolfe (Employers' Liability Assur. Corp., Ltd., Ap.)

Argued March 9, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Fred C. Morgan,* with him *Karl E. Richards,* for appellant.

*Earl Handler,* with him *Samuel Handler,* for appellee.

OPINION BY BALDRIGE, J., April 15, 1937:

In this workmen's compensation case we have for consideration the question: Is it proper to compute the weekly wage of an employee by multiplying his daily wage by 5½ when the contract of hire provides that he cannot work more than 8 hours per day or 30 hours in any one week?

Paul James Weaver was killed June 23, 1934, while employed as an unskilled laborer by R. E. Wolfe at the Middletown airport. Wolfe had entered into a contract with the United States Government for the construction of a sanitary sewer, which contained a provision that "so far as practicable and feasible in the judgment of the contracting officer, no individual directly employed on the project shall be permitted to work more than thirty hours in any one week: Provided, that this clause shall be construed to permit working time lost because of inclement weather or unavoidable delay in any one week to be made up in the succeeding twenty

days." It included the further limitation that no laborer shall be required or permitted to work more than eight hours in any one calendar day, and that unskilled labor shall be compensated at not less than fifty cents per hour. Weaver, when employed, was informed not only of his hourly rate, but also that he would not be allowed to work more than thirty hours in any one calendar week.

A compensation agreement was entered into, whereby the surety company, the appellant, agreed to pay compensation based on a weekly wage of $15. This agreement was disapproved by the Workmen's Compensation Bureau, as it did not contain a satisfactory explanation how the weekly wage was computed, and, upon the suggestion of the bureau, the claimant filed a petition for compensation, requesting that an award be based on an eight-hour day, at the rate of fifty cents per hour and a five-and-a-half-day week, making the weekly wage of the decedent $22. The referee allowed compensation on the basis of sixty-five per cent, which amounted to $14.30. The intervening defendant took an appeal to the board, which affirmed the referee, and the court, upon a further appeal, affirmed the award.

Section 309 of the Workmen's Compensation Act of 1915, June 2, P. L. 736, Art. III, as amended (77 PS §582), provides that an employee's "weekly wages shall be taken to be five and one-half times his average earnings at such rate for a working day, and using as a basis of calculation his earnings during so much of the preceding six months as he worked for the same employer." In *Romig v. Champion Blower & Forge Co.*, 315 Pa. 97, 172 A. 293, Mr. Chief Justice FRAZER, in construing this section, said (p. 102):

"We are of opinion the language of the act indicates the intention of the legislature to make five and one-half days the minimum working week for purposes of fixing compensation. No formula is provided for as-

certaining the compensation payable when the employee regularly works less than five and one-half days, although full instructions are given for computing the weekly wage where the claimant works more than five and a half days. Even though an employee, through no fault of his own, works less than five and a half days over such an extended period that the shorter number of hours becomes the normal and regular working week, what standard are we to apply in computing the compensation payable if the five and one-half day standard is not taken? Should the amount of wages actually received be the basis for estimating compensation, or shall we take a percentage of the amount actually earned? In the latter case the figure reached may well be below the $7 minimum prescribed by the act. No doubt it would be equitable to consider each case separately and arrive at a sum for compensation appropriate to the individual circumstances, but no such authority is conferred upon either the workmen's compensation board or the courts. We must take the law as we find it and apply the rules there set forth."

In *Modin v. City Land Co. et al.* (Minn.), 250 N. W. 73 (1933), section 4325 of the Workmen's Compensation Act of Minnesota, which provides that compensation shall be based upon a minimum weekly wage of not less than five and one-half times the daily wage, was under consideration. The claimant's employment by the city was for three days a week for two weeks and then he had to give way to other employees who were to work on the same terms. The claimant received more money by an award than he would have received had he not been injured. The court held that, notwithstanding the terms of the employment, the provision of the statute prevailed.

*Suire v. Union Sulphur Co.* (La.), 155 So. 517; *Benoit v. American Mut. Liability Ins. Co.* (La.), 162 So. 603;

*Workman et al. v. Kansas City Bridge Co.* (Kan.), 58 P. (2d) 90; *Drum v. Omaha Steel Works* (Neb.), 261 N. W. 351, do not furnish us aid, as the language of the various statutes involved is dissimilar to ours. In the Workman Case, the statute in force at the time of the accident did not contain a provision fixing the minimum week. It was amended November 27, 1933, by providing the weekly wage of an employee shall be found by multiplying the daily wage by 5. See Supp. (1933) Rev. Statutes Kansas 44-511. The court refused to hold that the amendment was applicable, but in discussing the Modin Case, supra, said: "The decision in that case rested upon a statute. It provided the weekly wage should not be less than $5\frac{1}{2}$ times the daily wage. The workman was employed on relief for 3 days a week. Logically, the proper method of determining the week's wages was by multiplying the daily wage by $5\frac{1}{2}$." If the amendment had been in effect, doubtless the decision would have been different.

The designation in our statute of a method of arriving at a minimum weekly wage for the purpose of fixing compensation may result in the payment of more compensation than the claimant actually would have received as wages. This may seem to be a hardship on the employer or its insurance carrier, but under the Romig Case, which controls us, that is just what occurred. We find nothing in the federal statute that convinces us it was the intention of Congress to abrogate or supersede the provisions of the state compensation legislation.

Judgment of the learned court below is affirmed.