No. 922

First Circuit

---

## GOUSOULIN ET AL. v. LAKE CHARLES STEVEDORES, INC.

---

(February 8, 1932. Opinion and Decree.)

---

Hawkins & Pickrel, of Lake Charles, attorneys for plaintiffs, appellants.

Moss & Siess, of Lake Charles, attorneys for defendant, appellee.

ELLIOTT, J. Albert Gousoulin, a longshoreman employed by Lake Charles Stevedores, Inc., while working for his employer on the Lake Charles docks, received on

March 27, 1931, an accidental injury, which on April 12, 1931, resulted in his death. Mrs. Anna Gousoulin, his widow, individually and acting for her children, Elaine, Ralph, Leona, Albert, Harry and Murphy Gousoulin, all minors, born of her marriage with the decedent, brought suit against Lake Charles Stevedores, Inc., for compensation. She alleges that his wage was 65 cents an hour; that he worked eight hours per day and seven days a week, and that she should therefore be paid 65 per cent of a weekly wage of $20 per week for a period of 300 weeks, together with funeral and burial expenses.

The only dispute is in regard to the daily rate of pay at which the compensation should be computed, due to the irregularity of the work in which the decedent was engaged and the varying wages to which he was entitled.

Defendant avers that the compensation should be fixed at 65 per cent of an average weekly wage of $16.05, which amounts to $10.29. This amount is offered by defendant for 300 weeks, and funeral and burial expenses, not exceeding $150. The lower court acting on the case fixed the compensation as defendant claims it should be. The plaintiff has appealed.

Albert Gousoulin was employed by the hour, and he was only entitled to pay for the hours that he worked, and according to a scale of wages which was fixed by an agreement between the longshoremen's union, to which he belonged, and the Lake Charles Stevedores, Inc., by whom he was employed. His work was irregular, in the matter of time. His wage was also dependent on whether the ship which he was loading or unloading was ocean-going or coastwise. The evidence shows that eight hours were considered a day's work. If he worked more than eight hours, the ex-cess was overtime. If the work was on an ocean-going vessel, his wages were 65 cents an hour and $1 an hour for overtime. For coastwise vessels he received 60 cents an hour and 90 cents an hour for overtime. Sometimes he served as a foreman, for which service he received an extra 10 cents an hour. Some days he worked only a few hours; some weeks, only a day or two; during other weeks he worked from 3 to 5 days. Occasionally he worked every day in the week and now and then on Sundays.

The following statement in the opinion of the lower court is a correct summary of the evidence on the subject:

"As a member of the longshoremen's union and under their agreement with the defendant, Gousoulin worked when, and only when, there were ships in port to load or be unloaded. Ships came in at irregular times and Gousoulin had to hold himself in readiness to work 7 days a week and at any time during the day or night. He usually had several hours notice of the arrival of a ship and of the fact he was needed to work. Had he not reported for work when called, he would have lost his job, and he was therefore unable to work at any other job, when ships were not in port."

Act No. 20 of 1914, sec. 8, par. 3 (amended by Act No. 242 of 1928, p. 361) provides:

"The term 'wages' as used in this act is defined to mean the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury. * * * *"

His compensation was dependent on so many contingencies and varied so greatly from day to day, from week to week, and from month to month, that some kind of an average must be adopted. The language in the latter part of the enactment uses the word "daily," but, in the first

part of the enactment, the compensation is based on a weekly wage. For instance, the compensation that a man receives for the loss of a finger, a hand, an arm, a foot, or on account of a partial or temporary or total disability, is fixed by the statute according to his weekly earnings. In this instance the decedent had been working for 56 consecutive weeks; therefore the district judge ·in fixing the compensation due the plaintiff took her husband's weekly earnings for 56 weeks, ascertained his average weekly earnings during the total time he had worked and according to which he had earned during said time an average weekly wage of $15.83½, and, 65 per cent of same being $10.29, the court fixed plaintiff's compensation at this amount for a period of 300 weeks.

The method adopted by the lower court appears to us to be just to the plaintiff and defendant. The plaintiff suggests other ways in which her compensation should be fixed, but such methods of computing compensation would result in giving the plaintiff compensation greater then the amount her husband had ever earned, and therefore would be unreasonable.

The term "daily wage" used in the law was taken into account by the court in a number of cases. Dick v. Gravel Logging Co., 152 La. 943, 95 So. 99; Danzy v. Crowell & Spencer Lumber Co., Ltd., 16 La. App. 300, 134 So. 267; Boyett v. Urania Lumber Co., 8 La. App. 132. And a construction similar to the present was adopted. The allowance of $150 on account of funeral and burial expenses is not contested.

The judgment of the lower court is correct.

Defendant appellee to pay the cost in the lower court; plaintiff appellant the cost of appeal.