No. 923

First Circuit

WILLIAMS v. LAKE CHARLES STEVEDORES, INC.

(February 8, 1932. Opinion and Decree.)
(March 8, 1932. Rehearing Refused.)

Hawkins & Pickrel, of Lake Charles, attorneys for plaintiff, appellee.

Moss & Siess, of Lake Charles, attorneys for defendant, appellant.

ELLIOTT, J.   John Williams, a longshoreman, while employed by and working for Lake Charles Stevedores, Inc., on the docks at Lake Charles, received on December 9, 1930, an accidental injury to his foot and ankle causing him a very serious, painful, and lasting injury.   He claims of Lake Charles Stevedores, Inc., compensation at the rate of $20 per week for a period of 125 weeks on account of his injury, less $110 already paid.

Defendant denies liability, but plaintiff's right to compensation is not questioned by evidence.   The dispute has to do with the method which should be used in computing the amount due him and the extent of the disability which plaintiff suffers on said account.

The lower court fixed his compensation at $13.08 per week for 125 weeks, less $110.11 received, reserving to each party the right to apply for a reopening of the case any time within six months.   Defendant has appealed.

The injury which the plaintiff sustained is at the place where the foot and ankle join, but has affected both the foot and the ankle.   A number of physicians gave testimony concerning the injury and the probable duration of plaintiff's disability due to same.   Their opinions on the subject are not the same; consequently the observations of the court concerning plaintiff's condition, as stated in his written opinion, is welcomed by us as a very important help in arriving at a satisfactory conclusion.

The duties of a longshoreman require physical strength, and the work cannot be performed except by manual labor such as lifting, walking, and sometimes standing on the feet.   Dr. Holcombe gave it as his opinion that plaintiff was suffering pain and was not in any condition to perform any kind of labor which usually falls to the lot of a longshoreman; he was a total disability in that respect.   The doctor had reference to the time of the trial, which was about seven months after the injury.

Plaintiff is a negro laborer, not qualified to do any other kind of work except manual labor, and his business is that of a longshoreman.   Therefore, if he cannot lift weights, walk fast, or stand on his feet, his disability is total in so far as the work of a longshoreman is concerned.   There is no other kind of manual labor which he can do, without the use of his foot, and, as he suffers excruciating pain when he walks or stands on his foot, there is nothing he can do in his present condition.

Dr. McKinney says:

"It is evidently impossible for plaintiff to stand on his foot and work without a great deal of pain.   Plaintiff is a perma-

nent disability; his foot will never be normal again."

Dr. Tutem gave testimony on the subject along the same line as did Dr. Holcombe and Dr. McKinney.

Dr. Watkins gave testimony more favorable to the defendant on the subject of plaintiff's incapacity, but, when his testimony is considered as a whole, it leaves us under the impression that plaintiff, in his present condition, is, in his opinion, a total disability, and no time can be fixed when his condition will be such that he can resume his usual vocation.

Dr. Kushner, called on to treat plaintiff immediately after his injury, had him under his care about 4 months. He then discharged him, and, speaking of his condition at the time of his discharge, says:

"Discharged him with the notation—he stated he had some pain. At that time the ankle was not swollen; he was wearing a brace.

"Q. Doctor, did you consider him entirely well and able to go back to work at the time you discharged him?

"A. I considered he had some disability. I believe most of it was due to his blood condition, if not all of it, due to syphilis, not on account of the injury."

In response to question as to whether there was any difference in the condition of plaintiff's foot then and at the time he was discharged, Dr. Kushner said:

"Seemed to be more swollen then, than at the time I discharged him."

He inferentially states that plaintiff's present condition is not due to injury, but to the syphilitic condition of his blood, and that he would have recovered had it not been for that condition. The evidence shows that plaintiff's syphilitic condition existed previous to the injury. It was shown that it was dormant, inactive, and was not giving any trouble at all, and it might have never given any if it had not been for the injury in question. The most that can be said on the subject is that plaintiff's syphilitic condition retards his recovery.

The physicians were asked concerning the percentage of incapacity which plaintiff suffers, and in their answers they estimate the percentage as if his disability could be calculated in that way. One places it at 10 or 15 per cent; others as high as 25 per cent. The defendant urges that we should be governed by this percentage of incapacity in fixing plaintiff's compensation.

We cannot adopt such a method and do justice to the plaintiff, because, according to the evidence, plaintiff suffers pain all the time and it becomes excruciating when he stands on his feet or walks. No time can be fixed when he will be free from pain and suffering, due to his injury, nor able to resume the use of his foot, absolutely necessary in the performance of his work as longshoreman, or to do any other kind of manual labor that he is qualified to do. It would be unreasonable to hold that plaintiff must work in the condition he is now, and has been constantly since the time he was injured. He must be regarded for the time being as if he had suffered the loss of his foot, and be compensated accordingly.

As for the right of either party to apply for a reopening of the case at the end of six months, we approve of that part of the judgment. The parties would have that

right, however, as a matter of law, without any reservation on the subject.

The next question is, How should plaintiff's compensation be computed? The situation in the matter of the employment of the plaintiff is exactly the same as existed in the case of Mrs. Anna Gousoulin v. Lake Charles Stevedores, Inc., 19 La. App. 96, 139 So. 747, this day decided. We quote the lower court:

"As a member of the Longshoreman's Union and under the agreement with the defendant, Williams worked when and only when, there were ships in port to be loaded or unloaded. Ships came in at irregular times and Williams had to hold himself in readiness to work 7 days a week and at any time during the day or night. He usually had several hours notice of the arrival of a ship and of the fact he was needed to work. Had he not responded for work when called he would have lost his job, and he was therefore unable to work at any other job when ships were not in port."

Plaintiff worked by the hour and was paid according to the number of hours that he worked. The amount of his wages per hour depended on whether the ships on which he was working were ocean-going or coastwise vessels. He got extra wages for overtime. He worked consecutively 9.43 weeks immediately preceding his injury. During this period of time he earned a total of $189.90, which was an average of $20.13 per week. Using this as a basis, 65 per cent of the same amounts to $13.08, which, as found in the lower court, is the compensation to which the plaintiff is entitled, subject to a credit of $110.11 paid. The judgment appealed from is correct.

Judgment affirmed. Defendant, appellant to pay the cost in both courts.