Plaintiff instituted this suit for compensation, alleging that he was totally and permanently incapacitated from performing manual labor, the only kind for *Page 67 
which he was fitted, due to an injury he received in an accident while in defendant's employ. He alleged his weekly wage was $14.40 and prayed for judgment in the amount of 65% of his weekly wage for a period of 400 weeks.
Defendant is the owner and operator of the Barras Transfer Line, its domicile being at Lafayette, Louisiana. He is engaged in transporting by trucks and vans all kinds of merchandise and household goods within the state of Louisiana. Defendant secured a contract to move from the old Post Office Building, in Monroe, Louisiana, to New Orleans, Louisiana, certain books, files, goods, etc., of the Works' Progress Administration.
Defendant had parked its large truck or van in front of the said building in Monroe and had begun loading it when one of his helpers quit the job. Plaintiff was standing nearby and was approached by one of defendant's employees, the truck driver, who was in charge of the truck and of moving the goods, and was asked if he wanted a job. Plaintiff inquired what he paid and was told thirty cents per hour. Plaintiff also contends that he was told at the time that the job would be a regular one. This is denied by the truck driver. The plaintiff produced three witnesses who corroborated him on the question of the permanency of the job. Defendant's truck driver and his helper denied there was anything said about the job being permanent or a regular one and the truck driver apparently had no idea of hiring plaintiff other than for the job of assisting in loading the truck. He had no authority to hire him for any other purpose.
Whether plaintiff was hired only for the job of assisting in loading the truck or hired permanently is immaterial. He immediately went to work carrying boxes, files and books from the office on an upper story of the building down the stairway and out to the truck where he loaded them onto or in the truck. After plaintiff had placed his load in the truck he would have to get inside and arrange the goods properly. After working approximately three hours and when he was going down the steps with a heavy filing case, plaintiff fell and went down the steps headfirst, coming to a stop before he reached the bottom. The heavy filing case plaintiff was carrying fell on him and severely injured his back. He explains the accident by saying that one of the drawers of the case was slipping out and when he attempted to push it back in its place he lost his balance or tripped and fell.
The testimony is most convincing and not disputed that plaintiff is seriously injured and incapacitated to perform manual labor. He was under the treatment of a physician of defendant's choice for a long time and has contracted a sizable doctor's bill. He needs further treatment the cost of which will make his medical bill far in excess of the $250 allowed by the Workmen's Compensation Act, Act No. 20 of 1914, as amended.
Plaintiff is clearly entitled to compensation for total and permanent disability if he is covered by the Workmen's Compensation Law of this State. Act No. 20 of 1914, as amended. The lower court, we are informed from the briefs of counsel, found that plaintiff's employment was not for the specific job of loading the truck but was a regular job which required him to go with the truck wherever it went. If that were true, there could be no doubt about the right of plaintiff to recover. Snear v. Eiserloh, La.App., 144 So. 265.
We, however, are not convinced that is true and are of the opinion that plaintiff was employed only to assist in loading the truck as contended by defendant. It is defendant's contention that the job of loading a standing truck is non-hazardous and therefore plaintiff does not come under the act. We are of the opinion the act does cover plaintiff's case.
The business of operating a truck line as defendant was doing has definitely been classed as a hazardous one and plaintiff's duties required him to be in and about the very instrumentality, the motortruck, which caused the business to be classed as hazardous. The truck could not or would not be operated unless it was loaded and the loading of the truck was not only incidental to the business of trucking but was a most important part of it. It is certainly too closely connected with the business of the truck line to be held not a part of the hazardous business. To hold otherwise would be to draw too fine a line of demarcation for the liberal construction required to be placed on the Workmen's Compensation Act.
If defendant's contention is correct then the only employees covered in the employ of a railroad company would be those required to operate or ride a train or other *Page 68 
steam or motor propelled cars used by the railroad company.
In the case of Robichaux v. Realty Operators, Inc., 195 La. 70,196 So. 23, 24, decided March 4, 1940, the Supreme Court of this State went much further than we are asked to go in holding that Robichaux was covered by the Workmen's Compensation Act of this State. The facts in that case are set forth by the court as follows: "The defendant owns and operates three large sugar factories in different parishes in Louisiana, and is a part owner of another large sugar factory. In connection with this extensive business of manufacturing sugar the defendant plants, cultivates and produces for its mills more than 9000 acres of sugar cane on its plantations. The plaintiff was employed on the defendant's Greenwood Plantation, in Terrebonne Parish, in the harvesting season, at the time of the accident. His work consisted of piling up the sugar cane on the rows so that it could be picked up by a portable derrick, or cane loader, and loaded into carts, which hauled it out to the highway, where it was transferred to trucks, by means of a stationary derrick, and was sent onto the defendant's factory on another plantation, seventeen miles away. The method by which the plaintiff gathered the cane into piles on the dirt rows was to place the end of a six-foot pole — nearly three inches in diameter — under the row of cane, and lift the other end of pole and thus shove the cane forward into a pile. The plaintiff testified that, on the occasion of the injury, while he was piling the cane on the rows, and at the same time was trying to cross a cross-drain, or mud-drain, as he called it, a pile of cane rolled back upon the pole and caused a severe shock or jar in the palm of his hand, or at the place which the doctors have described as `the palmar surface of the proximal phalanx of the right index finger.'"
In finding that Robichaux was covered by the Workmen's Compensation Act, the court said: "A farmer's employee who is engaged in delivering a farm product to the market, or to the buyer, is employed in the farming business; but a manufacturer's employee who is engaged in delivering a farm product to his employer's factory for conversion into a manufactured product is employed in the manufacturing business. The question whether an employee engaged in delivering a farm product to a factory for conversion into a manufactured product is employed in the farming business or in the manufacturing business arises only in cases like this, where the employer is one who is both the farmer and the manufacturer. And in such cases it has been decided that the employment is in the manufacturing end and not in the farming end of the employer's business or occupation. In Dartez v. Sterling Sugars, Inc., 7 La.App. 414, quoted with approval in Comeaux v. South Coast Corporation, La.App., 175 So. 177, 178, it was said: `It is the (employer's) occupation in which the person is employed to perform services rather than his particular duties that determines the application of the Workmen's Compensation Act No. 20 of 1914. The hauling of cane to the derrick was part of the operation of the factory where the finished product was made, and, therefore, the business was hazardous within the meaning of the Workmen's Compensation Act, No. 20 of 1914, as amended.'"
In that case, which was the unanimous decision of our highest court and probably the last expression of that court on the subject, the decision was based squarely upon the fact that the employer was engaged in a hazardous occupation and not on the services of plaintiff being of a hazardous nature, in fact, Robichaux's duties were not in themselves hazardous. The cutting and piling of sugar cane has never been classed as hazardous and it is to be especially noted in that case that Robichaux was not even engaged in loading the truck which was to haul the cane but was only piling the cane for future loading and it is not intimated even that he was to have anything to do with the loading.
It is unnecessary for us to rely on the Robichaux case which, to our minds, has stretched the Compensation Act in several respects to the nth degree to support our views that plaintiff here is covered by the Workmen's Compensation Act. But if there was any doubt in our minds about the correctness of our opinion, we could rely on this late expression of the Supreme Court to ease our minds.
We therefore find that plaintiff herein is entitled to compensation for total and permanent disability.
The only remaining question is the amount of compensation due plaintiff. Defendant contends that plaintiff was hired as an extra helper to load the truck and for the work performed he was paid ninety cents, being thirty cents per hour for three hours; that his employment would have ended upon the completion of the loading *Page 69 
of the truck and did end at the moment he was injured; and that he could be entitled at the most to the amount of ninety cents per week. He contends that Section 8 (3), Act 20 of 1914, as amended by Act 242 of 1928, is applicable. That section reads as follows: "The term `wages' as used in this act is defined to mean the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury, and anything herein contained to the contrary notwithstanding the maximum compensation to be paid under this act, shall be twenty dollars per week and the minimum compensation shall be three dollars per week; provided that if at the time of the injury the employee was receiving wages at the rate of three dollars or less per week, then compensation shall be full wages."
We cannot agree that the above-quoted section is authority for finding that the weekly wage of plaintiff is ninety cents per week, the amount he received for three hours' work for defendant. Nor can we agree that the rule laid down in Mayer's Workmen's Compensation Law in Louisiana, page 100, which is based on a line of decisions from the First Circuit Court of Appeal of this State, and which is, "Where the contract of hiring is expressly for a limited number of hours or days and that is set up in the special plea, compensation is allowed on the basis of the contract rather than on the basis of the normal working day or week."
The cases relied upon to support this rule are: Durrett v. Unemployment Relief Committee et al., La.App., 152 So. 138, decided January 22, 1934; Young v. Unemployment Relief Administration et al., La.App., 154 So. 642, decided May 8, 1934; Suire v. Union Sulphur Company et al., La.App., 155 So. 517, decided June 11, 1934; and Benoit v. American Mutual Liability Insurance Company, La.App., 162 So. 603, decided June 29, 1935.
In the first of these cases [152 So. 140] our brothers of the First Circuit said:
"In describing the manner in which the relief committee operated, we stated that the maximum amount of work any employee could get was four days per week. Obviously, therefore, there could be no such thing as a six-day work week for any of them. It was also stated that the plaintiff was approved as a work relief case and given two days' work per week at $1.50. That he was limited to that number of days, he admits himself. His counsel contends however that, as he was paid off at the end of each working day, $1.50 was his daily wage, and that, as the rate of compensation is based on the daily wage and not on the average earnings, plaintiff is entitled to recover at the rate of 65 per cent. of his average daily wage for six days. In support of his contention, counsel cites the case of Rylander v. T. Smith Son,177 La. 716, 149 So. 434. We do not construe that decision to hold that an employee's right to recover compensation at a rate based on his daily wage for a six-day work week is absolute under any and all circumstances. We believe that his right to recover on that basis exists only where there is no agreement limiting the number of days per week he is engaged to work. That is the way in which we read the statute on this important point. It specifically defines the term `wages' as being `the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time ofthe injury.' (Italics ours.) See amendments to section 8 of the Compensation Statute by Act No. 216 of 1924 and Act No. 242 of 1928. Here the contract of hiring or the agreement under which plaintiff went to work, as testified to by the relief director of Vernon parish and the field worker who investigated his case, and as also admitted by him, was that he could get only two days' work per week. The director testified that, if one of their workers obtained enough work outside of what they gave him to cover his food budget, he was no longer eligible for relief. Plaintiff had no outside work, and his pay as a relief worker was all that he received in the way of wages. The testimony of all those connected with the relief committee shows under what restrictions they had to operate. The relief afforded had no doubt to be exercised under such restrictions so as to best conserve the funds that were being spent in the interest of the unemployed and destitute. There was good reason therefore for a perfect understanding between the committee, which was the employer, and the employee, as to how many days' work he would get, and, when the employee accepted the employment under those conditions, there resulted the `contract of hiring' between them. The contract in force at the time plaintiff herein was injured stipulated only *Page 70 
two days' work per week at $1.50 per day. Based on that wage, he of course is limited to the minimum amount of compensation allowed under the statute, which is $3 per week, and which the district judge correctly awarded him for a period of not exceeding 400 weeks.
"We find the judgment appealed from correct in all respects and it is therefore affirmed."
This reasoning and finding of the court was followed in the other three cases. In our opinion, the conclusions arrived at by the court we think are incorrect due to an erroneous interpretation of Section 8 (3), Act 216 of 1924 and Section 8 (3), Act 242 of 1928, amending Section 8 of the original compensation statute, Act 20 of 1914.
The language "under the contract of hiring in force at the time of the injury", italicized by the court in the quoted portion of its opinion, can refer only to the daily rate of pay and cannot under any strained construction refer to the number of days of work per week. The language of Section 8 (3), above quoted, seems clear and unambiguous and it is our opinion that the erroneous construction given it by our brothers of the First Circuit accounts for the above-quoted erroneous rule laid down in Mayer's Compensation Law in Louisiana, relied upon here by defendant.
In the case of King v. American Tank Equipment Corporation, 144 So. 283, 289, decided by us on November 10, 1932, we had occasion to pass upon the question involved here. In the King case plaintiff was employed to assist in unloading a freight car at an agreed daily wage of $4.50 per day. His employment was for that particular job. It was agreed that not more than three days would be required to complete the job. King was injured on the first day he began work. Defendant contended that weekly compensation should be fixed on the basis of 65% of his daily wage multiplied by three, the greatest number of days it would have taken to complete the job for which he had been employed. On that question this court said:
"The Workmen's Compensation Act should be liberally construed in favor of its beneficiaries, and in doing so, the spirit and purpose of the act should be taken into consideration. It is a humane law, founded on public policy, and is the result of thoughtful, painstaking, and humane consideration. It was intended as a substitute for the defective and insufficient remedy theretofore existing for the adjustment of claims of employees, or their dependents, against employers for injury to or death of employees by accident in the course of their employment, and as a means whereby compensation might be had for every accidental injury or death coming within the provisions of the act, and the injured employee, or his dependents, in case of his death, be protected against the delays and the expense incident to the former remedy, and as a method whereby he or they might receive regulated compensation, payable at stated periods, so as most effectually to carry out the purpose of the act, which is to provide the injured employee, or his dependents in case of death, with payments periodically over a fixed space of time with which to meet his or their continuing necessities and not become a public charge, in the strict sense of the word. We can readily see that the public policy and humane thought behind the act are Well defined.
"The lawmakers originally fixed the amount to be paid in cases of this kind at a certain per cent. of the average weekly wage for the year prior to the date of the accident, and later, in their wisdom, fixed the amount of compensation for total disability at 65 per cent. of the employee's weekly wage, based upon his daily wage, for a period of not more than 400 weeks. As the law originally read, there were many cases in which the amount of compensation paid an employee was not sufficient to meet the purposes of the law, and, if we should adopt the contention of defendant in this case, that is, if an employee was employed for only one day a week and be injured on that day, that his compensation should be based on 65 per cent. of his weekly wage, or 65 per cent. of one day's wages per week. Clearly, the spirit and purpose of the Compensation Law would be done violence.
"Economic conditions may be such that a man can only secure employment for one, two, or three days a week. It is not certain that such a condition will continue. It is to be hoped and expected that such condition will not last a long time. Under defendant's contention, one injured while working only one, two, or *Page 71 
three days a week, due to unusual economic conditions, should only be allowed compensation at 65 per cent. of his daily wage, based upon the number of days then employed, although he has become totally disabled and will never be able to work again, when if he had not been injured, he could possibly have secured employment for six days a week in the near future. The accident and injury have deprived him of the ability to work in the future, when he could secure full time employment.
"To hold to defendant's theory would be to penalize the injured employee, because of unfortunate economic conditions prevailing at the time of injury with no right in the future to remove the penalty, should economic conditions become better. This, no doubt, was the reason of the change in the law from the average weekly wage to daily wage, and when the law reads to be paid weekly, based upon his daily wage, it means that his daily wage shall be multiplied by the number of working days in the week, which is generally understood at the present time to be six. If the five-day working week ever becomes a law, it no doubt will then govern. An exception to this rule would be where one was employed actually and specifically to work only seven days a week. It would not be an exception where one was employed actually and specifically to work only three days a week, for the reason that such employment would not prevent the employee from working some other place for the remaining three days, if he could secure a job. Under defendant's contention, an employee might secure employment for six days and work each day with a different employer, and then, although he was working a full six-day week, if he met with an accident on any day in the week, he would only be entitled to compensation for 65 per cent. of his daily wage per week of one working day. Such could not be the purpose or intent of the law and is not the law as written.
"An employee who is accidentally hurt, and whose case comes under the provisions of the Louisiana Compensation Act, is entitled to compensation based upon his daily wage, multiplied by six, the usual number of working days per week, whether he was employed for a lesser number of days or not, and only in such cases as where he is employed actually and specifically for seven days a week is he entitled to more than six days a week. In this case, plaintiff was not employed to work seven days a week. He was employed to assist in unloading a car of steel strips which at the most would not have taken more than three days. Therefore, plaintiff is entitled to compensation at the rate of 65 per cent. of the weekly wage, based upon his daily wage of $4.50 per day, for a six-day week, or 65 per cent. of $4.50 multiplied by six, for the period of disability, not to exceed four hundred weeks."
In the case of Rylander v. T. Smith Son, Inc., 177 La. 716,149 So. 434, 435, decided May 29, 1933, the Supreme Court of this State cited King v. American Tank Equipment case and quoted the material part of our finding in that case, continuing its opinion as follows:
"This was correct. The workmen's compensation statute is not a statute allowing the workman damages for injuries sustained in the course of his employment even through the negligence or fault of his employer. It is essentially insurance against the loss or diminution of earning capacity, see section 8, subsec. 1 (a) (b) (c). That earning capacity was first fixed under the original act, as the `average weekly wages' for the year preceding the injury; it is now fixed, by the amending acts, at `the daily rate of pay * * * at the time of the injury'.
"The view hereinabove taker was also again taken by the Court of Appeal for the Parish of Orleans in Chatman v. Compania De Navagacao Lloyd Brasileito, 19 La.App. 616, 140 So. 141. A writ of certiorari therein was denied by this court on May 23, 1932.
"In the case before us the Court of Appeal followed its ruling in the case just cited, and our opinion is that its judgment was correct.
"In Gousoulin et al. v. Lake Charles Stevedores, Inc., 19 La.App. 96, 139 So. 747, and in Williams v. Lake Charles Stevedores, Inc., 19 La.App. 185, 139 So. 748, the Court of Appeal, First Circuit, seems to have thought that because the compensation to the injured workmen is payable weekly therefore when a workman was not employed full time his `average weekly wages' for a past period [of time] was a fair standard for measuring his `daily wage.' This would, of course, *Page 72 
give the average daily earnings of the injured workman for the period immediately preceding the injury, but that is not the standard of compensation provided in the statute which distinctly fixes the standard of compensation as the `daily rate of pay * * * at the time of the injury.' And accordingly we think the Court erred and that the views of the Court of Appeal for the Second Circuit and for the parish of Orleans correct."
In Calhoun v. Meridian Lumber Company, 180 La. 343,156 So. 412, 415, rendered July 2, 1934, the Supreme Court again reaffirmed the rule laid down by us in the King case on the following language:
"The next question is the basis for the weekly allowance. It seems that for several months prior to the accident, plaintiff's employer, because of the economic situation, had been working its crews only half time, or three days per week. Defendant contends that the actual money earned was plaintiff's weekly wage.
"In the latest and controlling case on this subject, that of Rylander v. T. Smith Son, 177 La. 716, 149 So. 434, our Supreme Court held that a workman's weekly wage was not computed on the basis of the two or three days a week his employment was limited to by economic conditions, but on the normal employment of six days a week; the purpose of the act being to compensate the workman for the loss of ability to work in the future rather than the actual loss of pay that he was receiving at the time. Upon the authority of this case we find that plaintiff's weekly wage should be computed on the basis of a six-day week."
And in Jones v. Southern Advance Bag Paper Company, 157 So. 754, rendered by us on December 5, 1934, we again followed the rule of the King case.
The First Circuit Court was not unmindful of the above-cited decisions of this court and the Supreme Court which were rendered prior to its decision, but it has attempted to differentiate the cases. To our minds, the decisions cannot be reconciled without completely destroying the reasons for the rule set forth by us in the King case and adopted verbatim by the Supreme Court in the Rylander case. Believing, therefore, that we and the Supreme Court are correct, we shall apply the rule set out in the King case to the one at bar.
Plaintiff was employed at a rate of pay of thirty cents per hour. The regular working day is eight hours and the normal working week is six days. His weekly wage was thus $2.40 times six, or $14.40, and he is entitled to 65% of that amount for a period not to exceed 400 weeks.
The judgment of the lower court awarding plaintiff judgment for compensation for a period of 400 weeks is incorrect and that judgment is amended to read for not more than 400 weeks instead of for 400 weeks; and as amended, the judgment is affirmed, with costs. *Page 73