### DAWSON v. BARBER BROS. CONTRACTING CO., Inc., et al.

### No. 2100.

Court of Appeal of Louisiana. First Circuit.

April 10, 1940.

Durrett & Hardin, of Baton Rouge, for appellant.

Taylor, Porter & Brooks, of Baton Rouge, for appellees.

Le BLANC, Judge.

Douglas Dawson, an employee of Barber Brothers Contracting Company, Inc., instituted this demand for compensation at the rate of $9.36 per week for a period of four hundred weeks beginning July 17, 1939, subject to certain credits for amounts paid, and for the sum of $250 for medical expenses less certain amounts paid on that account also.

The defendants are the employer, Barber Brothers Contracting Company, Inc., and its compensation insurance carrier, The Travelers Insurance Company. They jointly filed a plea of prematurity which is based on paragraph (B) of sub-section 1 of Section 18 of Act 20 of 1914, as amended by Act No. 85 of 1926, which reads as follows: "Unless in the verified complaint above re-

ferred to it is alleged (where the complaint is filed by the employee or his dependents) that the employee or the dependent is not being or has not been paid, and that the employer has refused to pay, the maximum per centum of wages to which petitioner is entitled under the provisions of this act, the presentation or filing of such complaint shall be premature and shall be dismissed; when such allegation is contained in such complaint and is denied by the employer at the time fixed for the hearing thereunder by the Court, if it be shown that such allegations are without reasonable cause or reasonable foundation in fact, said complaint shall be dismissed * * *."

In the plea presented by them, the defendants set out that since the date of his alleged accident they have recognized and admitted their liability to the plaintiff for compensation under the statute at the rate of 65% of his weekly wages during disability, and they also admit present disability. The only controversy which ever existed, they aver, was with regard to the basis of his employment, that is whether he at any time ever worked more than thirty-six hours per week. Believing in perfect good faith, that he worked only thirty-six hours per week, and his rate of pay being 30¢ per hour, they had paid or tendered him compensation based on such weekly wages, or at $7.02 per week, from July 17, 1939 to October 3, 1939, when he refused further payments or tender of payments and claimed to be entitled to receive compensation based on wages of 30¢ per hour for forty-eight hours per week. They then aver that plaintiff and they were all in error with regard to the number of hours per week he worked and that the correct number was forty hours and he was therefore entitled to compensation at the rate of $7.80 per week. They aver that they had advised plaintiff that they wished to pay him at that rate and tendered him whatever the difference was between the amount based on that rate and the rate at which he had been paid, with interest and costs incurred in the filing of this suit. The offer and tender is again made in the plea, and the amount tendered, on order of the district judge, was deposited in the registry of the court for the account of plaintiff. Availing themselves of the further provisions of the sub-section of the statute under which the plea was invoked, defendants asked that it be heard and determined by the court before proceeding with the hearing of the other issues involved and which were presented in their joint answer filed at the same time as the plea.

Upon hearing, the lower court sustained the plea of prematurity and dismissed plaintiff's suit, whereupon this appeal was taken.

For the purpose of passing on the plea we think that the following are the pertinent facts to be taken into consideration: The defendant Barber Brothers Contracting Company, Inc., was engaged in work on a contract with The Louisiana Highway Commission on a job which was a federal project and under the regulation of the Federal Government agency in charge, all labor on the job was restricted to forty hours work in any one week except in cases of loss of time because of bad weather or shut downs in any one week, the loss could be made up in the succeeding three weeks. Plaintiff, who was employed as a laborer on the project, never, during the four weeks he worked, put in as many as forty hours per week. He sustained a compensable accidental injury on July 17, 1939, which was reported by his employer to its compensation insurance carrier. On the basis of the report made to it that he was employed at 30¢ per hour for thirty-six hours per week, the insurance company placed him on compensation at the weekly rate of $7.02 which he accepted without complaint. He was then paid until September 7, 1939, when the insurance company was informed by Dr. Ben Chamberlain, the examining physician, that in his opinion, he had recovered to the extent that he was able to resume work and payments were then discontinued.

After his payments stopped, plaintiff consulted an attorney who made claim on his behalf for further compensation on the ground that he was still disabled. As a result of this demand there was further investigation made by the insurance company and at a conference between one of its adjusters and plaintiff's attorney which took place on either September 18th or 19th, 1939, it was understood that the latter would have plaintiff re-examined and that the insurance company would be furnished with a report of the medical re-examination. It was at this conference also that the adjuster disclosed to plaintiff's attorney that there had been an error made in fixing plaintiff's compensation on a basis of thirty-six hours per week and that he came under the provisions of the regulation by the Federal Government agency, limiting labor to forty hours per week.

The insurance company, while waiting for a report of the medical re-examination which counsel was to furnish, next received notice of the present suit which plaintiff filed on September 27, 1939. It was only after suit had been filed that the insurance company came in possession of the report of this new examination which we understand was again made by Dr. Chamberlain who seemed to have been mistaken in discharging plaintiff as able to resume work on September 7, 1939, and now found him still disabled. On this report payments were tendered on the basis of forty hours per week making the weekly rate of compensation $7.80, covering the entire period of disability from July 17, 1939, with interest and costs, and further payments at the same rate as long as disability continued, not exceeding four hundred weeks. The tender of course was subject to whatever payments had already been made. It was refused and the money ordered deposited in the registry of the court. Under stipulations later entered into, however, the tender was accepted and payments were continued without prejudice to the plaintiff's right to contest the plea of prematurity.

Mention should also have been made of the fact that all medical expenses incurred had been paid by the insurance company.

It is to be noted that under the subsection of the compensation statute on which the plea is based, there are two situations which may present themselves, under either of which the plea might prevail. The first is the absence of an allegation in the verified petition of the complainant to the effect that he is not being or has not been paid, and that his employer has refused to pay him the maximum per cent of wages to which he is entitled under the act, and the second, in the event his petition does contain such allegations and the same are denied, and on hearing, they are shown to be without reasonable cause or reasonable foundation in fact. The plaintiff's petition does contain the essential allegations referred to so we are here concerned with the second of the two situations contemplated under the sub-section. The defendants denied these allegations and the sole issue therefore is whether under the facts presented, they are shown to have been made without reasonable cause or without reasonable foundation in fact. After careful consideration of the record as presented, we have concluded that they were.

The defendants never disputed the fact that plaintiff had been injured and conceded their liability at once by paying him compensation. Acting in good faith on the report of the examining physician that he was able, after a few weeks, to resume work, they discontinued the payments but readily agreed to a re-examination after further claim was made on them. Plaintiff's counsel strenuously urges that he did not agree with the adjuster of the insurance company who was handling the claim, to withhold filing suit pending the re-examination of his client but he admits that he told him that he would furnish him with a report of the examination from which promise, as it were, the insurance company could properly have implied that the matter would be held in abeyance until such report was received by it. Finally, after suit had been filed and it came in possession of the report which showed existing disability, the insurance company, without further controversy, offered to resume payments which included the difference that was due plaintiff between what he had received as compensation based on a thirty-six hour week and what he really was entitled to on the basis of a forty hour week, which error, incidentally, seems to have been discovered and attention directed to, by it. The offer and tender also included interest on all back payments and the costs of suit so far incurred. There was no undue delay, as far as we can see, and we are at a loss to understand what more it could reasonably have been expected to do.

But counsel for plaintiff maintains that a dispute still exists between his client and the employer as he contends, and plaintiff so alleges in his petition, that he is entitled to compensation at the rate of $9.36 per week based on a wage of 30¢ per hour, eight hours per day, and six days per week. In this connection it is to be observed that plaintiff does not allege that he worked such time nor that he was employed to do so. His allegation is merely a general statement to the effect that a regular working day consists of eight hours and a working week, six days. The fact is, however, as we have already stated, that his employer was engaged on a federal project and under the rules and regulations of the governmental agency in charge, labor was restricted to forty hours work per week. Under the ruling in the cases of Barr v. United Gas Public Service Corporation, 183 La. 873, 165 So. 129, Benoit v. American Mutual

Liability Insurance Co., La.App., 162 So. 603, Durrett v. Unemployment Relief Committee, La.App., 152 So. 138, and others of similar import, his compensation has to be based on the number of working hours per week as fixed in the rules promulgated by those agencies.

It is our opinion that where an employer, acting in perfect good faith on the advice or report of a reputable physician, who, as in this case, we have every reason to believe is eminently qualified, to the effect that an injured employee is able to resume work, stops paying him compensation, but on subsequent advice learns that an error has been committed, and then without unreasonable delay resumes payment and restores compensation to its original status, it should not be made to defend a suit, the result of which could only be to judicially declare that it must do what it actually is doing. To spare the trouble and expense incidental to a law suit under such circumstances is, we believe, the purpose of the sub-section of the compensation statute here under consideration which provides for its dismissal on a plea of prematurity.

The plea was properly sustained in the court below and the judgment dismissing plaintiff's suit is therefore affirmed.

OTT, Judge (dissenting).

As stated in the majority opinion, the plaintiff does allege in his petition that he was not being paid the maximum per cent of wages to which he was entitled at the time he filed his suit on September 27, 1939. The defendants do not deny that allegation but admit that the maximum per cent of wages was not being paid and had not been paid when the suit was filed, but seek to excuse their failure to make these payments and made an offer in their answer to pay up the past-due compensation and continue the payments on the basis of what they claim is the correct basis.

Not only had the employer failed to pay the maximum per cent of wages when the suit was filed, but it had failed to pay any compensation at all for some three weeks prior thereto. The compensation payments were handled by the insurance carrier, but, of course, the employer was under the same obligation to make the weekly compensation payments fully and promptly as was the insurance company.

The adjuster for the insurance company testified that he investigated the case and recommended that compensation be made on the basis of a 36 hour week and 30 cents per hour, this being the rate and hours reported to the insurance company by the employer. On this report and recommendation, compensation was paid for a little over seven weeks. The last three payments were not paid when due, but the adjuster stated that this delay was caused on account of his inability to get a prompt medical report from their doctor who was treating plaintiff. I am fully aware of the necessity of getting periodic medical reports showing the condition of the injured employee from time to time, and I also realize that there are times when these reports may be delayed, but I think that the employer and his insurance carrier are duty bound to arrange for and procure these reports so as not to unreasonably delay the payments to an employee who has a right to expect these payments every week as they may be his sole means of procuring the common necessities of life.

It was no doubt because of the delay in these last payments that plaintiff consulted an attorney, and these last payments were made through this attorney and in response to a letter by him to the insurance company on September 7, 1939. On the following day, September 8th, the insurer sent a check for these payments to the attorney, together with a final receipt for plaintiff to sign. The attorney struck out the word "final" and sent the receipt back to the insurance company in a letter under date of September 12th, stating in the letter that plaintiff's disability had not ceased and that plaintiff did not concede that he had been paid sufficient compensation for the admitted period of disability.

No further payments were made or offered until October 3rd, after the suit was filed. However, around September 18th or 19th, the adjuster and the attorney for plaintiff had a conference with reference to the claim, and it seems that the attorney stated at this conference that he intended to have his client examined and would furnish a copy of the report of the examination to the adjuster. The latter claims that he understood from this conversation with the attorney that no suit would be filed until this report was furnished. The attorney states that he did not agree or infer that he would withhold suit pending the examination and report.

Be that as it may, no further effort was made by the adjuster to pay or adjust the

50

difference in what had been paid as compensation and what was due on the basis of a 40 hour week which the adjuster admits that he ascertained to be the correct basis when he visited Baton Rouge to see the attorney about the claim around September 17th, and it was not until. October 3rd following that the company wrote that it was willing to continue compensation on the revised basis.

Such was the 'situation when the defendants came into court after the 'suit was filed and set up their mistake, gave their explanation of the delay in making the full payments, and indicated their willingness to continue payments at the revised rate as long as the plaintiff's disability continues, not exceeding 400 weeks. In my opinion, if an employer could thus delay payments, keep the employee in a state of uncertainty and require him to employ an attorney, and then when sued, come in and offer to make all back payments and offer to continue these payments in order to serve as the basis of a plea of prematurity and have the suit dismissed, a way would be opened to the employer to defeat the right of the employee to have his claim adjudicated by a judgment. As I read the law regarding prematurity, I understand it to mean that the failure or refusal of the employer to pay the maximum per cent of wages must be based on reasonable grounds. It is not altogether a question of good faith on the part of the employer, as we all may at times fail to discharge our obligations in perfect good faith, and yet not be free from fault or neglect. This seems to be in line with the interpretation of this law in the case of Clark v. Forest Lumber Co., 9 La.App. 639, 120 So. 88.

The law which permits an employer to prevent an employee from having his claim reduced to a judgment by showing that he is paying and has not refused to pay full compensation should be construed strictly, and the employee should not be deprived of his right to prosecute his claim to a judgment unless the employer shows that he is paying and has not failed or refused to pay .full compensation at the time the suit is filed. It is stated in the majority opinion that the purpose of the law is to enable the employer to avoid the trouble and expense of defending a lawsuit which could have no other result than to require him to do what he is already doing. I agree with that statement, but there is an-

other side to the question. The employee has a right to expect and to receive these payments promptly when the law says they are due, and if they are not paid when due, he must himself incur the expense of paying a lawyer out of his meager allowances.

In fact, it was the conduct of the defendants in this case, and not that of the plaintiff, which made it necessary for the latter to employ a lawyer to collect what should have been paid him without that expense. Why should the plaintiff be penalized by forcing him to employ a lawyer just because the defendants made a mistake, neglected to get the necessary information, or for any other reason failed to pay plaintiff full compensation when it was due?

In my opinion, the plaintiff has a right to prosecute his claim to a judgment and have the court determine the basis of his compensation and the period of his disability. The plea of prematurity should not be used under the circumstances of this . case to deprive him of that right.

I respectfully dissent.