68 So.2d 656 (1953)
FONTENOT
v.
COX et al.
No. 3735.
Court of Appeal of Louisiana, First Circuit.
November 13, 1953.
Rehearing Denied December 18, 1953.
Writ of Certiorari Denied February 15, 1954.
*657 Bienvenu & Culver, New Orleans, for appellant.
Parker & Scott, Baton Rouge, for appellees.
CAVANAUGH, Judge.
This is a compensation suit under the Employers' Liability Act, for weekly compensation at the maximum rate of $30 per week for a period not exceeding 400 weeks, together with legal interest on weekly compensation payments past due and unpaid, and a further additional sum of $1,000, or so much thereof as may be necessary for hospital and medical and drug expenses, with legal interest thereon from date of judicial demand until paid, and for the attorney's fees of 20% of any sum awarded plaintiff.
The defendants first appeared and filed an exception of prematurity on January 30, 1953, in which it is affirmatively alleged that the exceptors or defendants had paid the plaintiff compensation at the maximum rate of $30 per week from the date of the accident up to the present time without default and would continue to pay compensation until plaintiff is discharged by the physicians employed by exceptors to treat and care for him; that prior to the filing of the suit, plaintiff made no demand upon exceptors for the payment of any compensation; that there has been no refusal on the part of exceptors to pay compensation, and there has been no default on the part of exceptors in performing their obligations under the law and that this suit, therefore, be dismissed. They also allege that the plaintiff did not make written demand for medical reports prior to the filing of this suit.
Before the plea was heard, the defendants filed a motion and obtained a rule directed to the plaintiff to submit to medical examinations by Doctors J. Willard Dowell, Charles H. Moseley and Moss M. Bannerman.
The minutes show that on February 16, 1953, after argument, the Court granted the plaintiff leave to amend his pleadings on or before February 23, 1953, and the hearing was continued until February 23, 1953. On that date, evidence was heard on the plea of prematurity. The plaintiff, on February 17, 1953, filed an amended petition in which he alleges that he is not being paid compensation and that he was paid compensation through December 22, 1952, but as of the date of filing suit, January 20, 1953, defendants were in default and that after the suit was filed on January 20, 1953, he received checks from defendant in the sum of $90 and $30.
At the opening of the taking of the testimony on the trial of the plea, the following objection was made by defendant:
"In connection with this case, counsel for defendants and exceptors object to the filing of the supplemental and amending petition herein and to the order permitting the filing of said petition which was rendered on February 17, 1953, on the ground that under the provisions of the Compensation Act the original petition must set forth fully the specific requirements of the Act, *658 that compensation payments have not been paid and are not being paid and that defendants have refused to pay said compensation."
The Lower Court heard evidence on the exception of prematurity and for oral reasons, it was overruled. The rule for medical examinations was recalled and vacated.
The defendant was then accorded a delay within which to answer and subsequently answered plaintiff's suit by a general denial and the special defense that plaintiff would not submit to medical examination. The case was tried after regular assignment, and, at the conclusion of the testimony, the Court rendered judgment in favor of the plaintiff for weekly compensation at the rate of $30 per week beginning July 14, 1952, for the duration of his disability, not exceeding 400 weeks, subject to the credit for compensation paid through March 17, 1953 (a period of 34 weeks) amounting to $1,020, with interest at the rate of 5% per annum on each past-due installment from its due date and ordered all accrued amounts, with interest from the due date, to be paid to the plaintiff in a lump sum; awarded the plaintiff $500, or so much thereof as was necessary for medical, hospital and drug expenses; fixed the fees of the physicians testifying on the trial of the case and fixed the fees of the attorneys representing the plaintiff.
From this judgment the defendants have suspensively appealed and are insisting here that the judgment of the Lower Court should be reversed, and that the plea of prematurity should be sustained, and the plaintiff's suit dismissed, or that we should reverse because of plaintiff's failure to submit to medical examination, and, finally, if we consider the merits of the case, that the judgment should be amended and limited to recovery of compensation to not more than one year from the date of the accident.
We will first consider the exception of prematurity and the motion to compel the plaintiff to submit to medical examination. If the Court below committed error in its ruling on either one of these pleas, the defendants are entitled to a reversal of the judgment.
The grounds set forth in this exception as hereinabove recited challenge the right of the plaintiff to file and continue this suit because he was receiving and being paid compensation at the time the suit was filed. The objection on the trial of the plea of prematurity covers a ground not urged in the formal plea, in that the required allegation under Title 23, Section 1314 of LSAR.S. had not been made. If this objection, urged by oral motion in open court, can have the same effect as it would have had if formally plead, then the Court should not have permitted the amendment.
The statute requires the verified complaint or petition in a compensation suit to allege that:
"The employee or the dependents is not being or has not been paid, and that the employer has refused to pay, the maximum percent of wages to which petitioner is entitled under the provisions of this Chapter, or that the employee has not been furnished the proper medical attention, or that the employee has not been furnished with copies of the reports of examination or examinations made by employer's medical practitioners after written request therefor has been made under the provisions of this Chapter, the presentation or filing of such petition shall be premature and shall be dismissed; when such allegations are contained in such petition and are denied by the employer at the time fixed thereunder by the court, if it be shown that such allegations are without reasonable cause or foundation in fact, such petition shall be dismissed; and the question of whether or not such allegations of nonpayment or of failure to render medical attention or failure to furnish medical reports is justified under the facts shall be determined by the court before proceeding with the hearing of the other issues involved." LSAR.S. 23:1314.
*659 The plea of prematurity, therefore, can be urged by a defendant in a compensation suit when the plaintiff omits making the necessary allegations or when he makes the necessary allegations if they are challenged by the defendant as untrue. The first proposition is determined from the pleading; the second is determined after the matter is at issue by the plea. Until the plaintiff's petition contains this essential requirement, it is not entitled to be presented or filed.
The Supreme Court, in its decision of Thornton v. E. I. DuPont de Nemours & Company, 207 La. 239, 21 So.2d 46, 49, said:
"Subsection 1(B) of Section 18, therefore, does not justify the dismissal of this suit on the face of the plaintiff's petition, because he does allege `that he has been paid no compensation whatever by the employer since the date of the accident,' and he repeats that the employer has not `paid petitioner any sum of money whatever as compensation'."
In that case the allegation was made and the plea of prematurity was overruled, but in the present suit the original petition does not contain the necessary averment, and we have not been cited any case where the necessary allegation was omitted and where the plea was filed prior to an amendment of the original petition and then overruled.
It is our opinion that, unless the petition contains these essential allegations, it is subject to be dismissed, and none of the allegations having been made by the petitioner in the original petition, there is no alternative for us to follow but to apply the law as written, and hold that the suit was premature and subject to dismissal on the face of the petition.
From a reading of the petition it does not contain these essential averments and unless the Trial Judge had the right to permit the amendment after the plea was filed and to consider it over defendant's objection, then, as of date February 17, 1953, plaintiff was being paid compensation and had been paid compensation up to the filing of the amendment. The filing of the amendment by plaintiff was an admission that his pleading was defective and that his original petition as filed on January 20, 1953, could not be maintained.
We agree with plaintiff that the provisions of the Workmen's Compensation Law are construed liberally by the courts, but this provision of the statute was incorporated in Act 85 of 1926, requiring that this allegation had to be made by an employee filing a suit and unless it was made the complaint could not be presented or filed. It was for the purpose of preventing the filing of suits when an injured employee was receiving compensation and until such petition was amended on February 17, 1953, the plaintiff's complaint was insufficient to merit a trial or hearing, and on that date he was being paid all of the compensation due him.
The testimony heard on the trial of the plea shows that the compensation claim of the plaintiff was being serviced by the insurer of defendant through the Baton Rouge Claims Service, Inc. The compensation drafts would be issued in New Orleans in the office of the insurance company and mailed to Baton Rouge and mailed out of that office to the plaintiff, who lived in that city. Mr. Robique of this company testified as to when these compensation drafts were received by him, according to his record, and when they were mailed to the plaintiff. These drafts are for various amounts, some for $30, $60, and some for $90, issued between the time the plaintiff became disabled and the date the suit was filed. Plaintiff had received these drafts and accepted them in payment of his compensation during the period up to December 22, 1952. On January 14, 1953, a draft for $90 was issued in favor of plaintiff, and the representative of the Baton Rouge Claims Service, Inc., who serviced the compensation claim, testified that this draft for $90 was mailed to plaintiff at his address in Baton Rouge on January 16, 1953. Plaintiff testified that he did not receive this draft *660 until January 23, 1953. He stated that he received the $90 draft in the mail and the $30 draft, dated January 19, 1953, was delivered to him by his attorneys. He first stated that the draft for $90 was received by him on the 23rd of January, 1953, and that it was cashed on that same day along with the other one for $30, dated January 19th, which he had obtained from the office of his attorneys, Parker & Scott. The indorsement shows they were presented to the bank on January 22nd. The $90 draft first mentioned covered payments of compensation due plaintiff from December 23, 1952 to January 12, 1953 and the draft dated January 19, 1953, covered compensation payment due the plaintiff to January 19th. During the interval between December 22, 1952 and some time prior to the filing of this suit, plaintiff and the adjuster for the insurance company had been discussing a compromise of plaintiff's claim. When the plaintiff talked to the adjuster the last time before the suit was filed, the adjuster told him that he would find out whether or not they would accept his offer of compromise of $6,000, and during the conversation the adjuster told him that he would tell the adjuster to bring the checks. Plaintiff never contacted the representative of the Baton Rouge Claims Service, Inc., after that, but turned his claim over to his attorneys who filed this suit on January 20, 1953. If the draft for $90 covering the compensation payments due plaintiff up to January 12, 1953 was mailed to plaintiff out of the office of the Baton Rouge Claims Service, Inc., on January 16, 1953, we do not see why plaintiff would not have received this compensation draft prior to January 20, 1953. Attorneys for plaintiff notified the Baton Rouge Claims Service, Inc., after they filed the suit that they represented the plaintiff.
In view of plaintiff's accepting these compensation drafts and knowing at the same time that for the past six months he had received these belated payments from time to time and that his compensation payments were going to be continued, was he warranted in filing this suit? Plaintiff is not entitled to file the suit unless he is not being paid compensation as required by the statute and unless there was an unreasonable delay on the part of the defendant in not resuming his compensation payments after they had been temporarily suspended during negotiations, and there was no refusal to pay and no denial of liability. We believe that the suit was prematurely filed. Dawson v. Barber Brothers, La.App., 195 So. 46; Graham v. Young, La.App., 43 So.2d 297. In each of the cited cases the resumption of compensation payments was permitted more than one month after they were suspended.

On rule to compel plaintiff to submit to medical examination
The appellant complains here of the ruling of the Lower Court in refusing to compel the plaintiff to submit to medical examination by Drs. Bannerman, Moseley and Dowell, as requested in his motion. On the hearing of the rule, the Court denied the request although the request was made and the hearing had thereon two months before the trial.
Under LSA-R.S. 23:1121, it is provided:
"An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this Chapter."
Plaintiff's attorney wrote defendants' attorney that he would permit an examination by Dr. Dowell but would not permit an examination by Drs. Bannerman and Moseley because he did not think it necessary in view of the fact that they had been treating and examining the plaintiff up to the time the suit was filed.
It is our view that since plaintiff had filed his suit, the defendant was entitled to this examination although defendants' physicians had been treating plaintiff for his injuries. The defendant had a right to get *661 ready under the statute to defend the case in view of the pending suit, and the Trial Court had no right to hinder its preparation and prevent plaintiff from being examined. We do not understand the Lower Court's ruling, in view of the fact that it was made sixty days before the trial of the case, and a defendant in one of these cases is always entitled to have a plaintiff examined prior to the trial as long as the examination to be conducted by defendant's physician is reasonable. Weaver v. Mansfield Hardwood Lumber Company, La.App., 1 So.2d 103.
For the reasons assigned, the judgment of the District Court is reversed and set aside; the exception of prematurity sustained and plaintiff's suit dismissed.