BOLIN, Judge.
Plaintiff instituted this action against his employer’s insurer for workmen’s compensation for total and permanent disability resulting from injury sustained when a heavy dragline bucket fell on his right foot while he was performing duties as a welder’s helper. Defendant filed a plea of prematurity which was tried and subsequently overruled. The case proceeded to trial and from judgment in plaintiff’s favor defendant has appealed urging the incorrectness of the judgment of total disability and re-urging the plea of prematurity.
The circumstances and background relating to the plea of prematurity may be briefly stated. Plaintiff was injured on November 28, I960, and was paid weekly compensation until defendant discontinued such payments in June, 1961 on advice of its doctor that the employee was no longer disabled. Plaintiff immediately sought legal *473 counsel who wrote defendant a letter on June 17, 1961, wherein the attorney merely notified defendant of his employment hut made no demands. Under date of June 26, 1961, plaintiff’s attorney wrote another letter to defendant enclosing a medical report reflecting plaintiff’s disability and made demand therein to “contact us at your earliest possible convenience in this connection, or forward compensation checks due to date.” Thereafter followed other letters and telephone calls from plaintiff’s counsel to defendant. On August 4, 1961, one of defendant’s adjusters contacted plaintiff’s counsel and discussed settling the case for a lump sum. Later plaintiff’s counsel wrote defendant a letter as to what they thought the case was worth on a lump sum settlement basis. Then on August 18, 1961, plaintiff’s attorneys received a check from defendant for compensation payments from June 12, 1961, to August 14, 1961. On the same day plaintiff’s counsel returned the check to defendant and in the letter of transmittal gave as their reasons:
“We are returning herewith your draft dated August 16, 1961, payable to Alphonse Pea in the sum of $315.00.
“Because of your arbitrary suspension of compensation on or about June 10, 1961, and because of your unreasonable delay in resuming compensation payments after demand, we intend to have Pea’s compensation rights judicially established at this time.
“We have this day mailed a petition to the Clerk of the Eleventh Judicial District Court in and for DeSoto Parish, Louisiana, entitled Alphonse P. Pea v. Hardware Mutual Casualty Company.”
The trial court was correct in overruling the plea of prematurity under the above facts. It is clear that an injured employee may not file suit unless his employer has refused to pay him compensation as required by statute. Where the employer temporarily suspends payments upon medical advice that the employee is no longer disabled, he must resume such payments within a reasonable time after learning to the contrary and a demand being made for resumption of payments. Fontenot v. Cox (La.App. 1 Cir., 1953), 68 So.2d 656; Dawson v. Barber Bros. Contracting Co. (La. App. 1 Cir., 1940), 195 So. 46; Graham v. Young (La.App. 2 Cir., 1949), 43 So.2d 297.
The only question, therefore, is whether defendant waited an unreasonable length of time to resume compensation payments after it had received the letter from plaintiff’s counsel on June 26, 1961. This is a factual matter which must be determined from the peculiar facts of each case. We think a delay of approximately 55 days before tendering past due compensation payments’ was an unreasonable delay. Defendant contends plaintiff’s letter of June 26, 1961, could not be considered a real demand. We are not impressed with this argument, especially in light of the later repeated demands that defendant pay the injured employee as he was in necessitous circumstances.
Devoting our attention now to the merits, we must first determine the nature and extent of plaintiff’s injuries. This in turn can only be decided by a review of the medical evidence, which consisted of the testimony of the following:
1. Dr. Jacob Segura, general practitioner of Mansfield, Louisiana.
2. Dr. E. C. Simonton, Jr., orthopedist of Shreveport.
3. Dr. Ray E. King, orthopedist of Shreveport.
4. Dr. Bennett H. Young, orthopedist of Shreveport.
Our learned brother of the district court has favored us with a detailed and well-reasoned written opinion where he outlined the testimony of each of the above experts and we will not burden this opinion by a complete repetition of his findings. We *474 simply state the employee’s injury consisted of highly comminuted fractures of the distal third to the second, third and fourth and fifth metatarsal bones of his right foot. As there was a complete displacement of the fractures, Dr. King immediately performed surgery, placed pins in the broken bones and put the foot in a cast.
He was thereafter treated or examined by the other doctors previously listed herein. While there is naturally some disagreement among the medical experts, we are in complete accord with the ultimate findings of the district judge and therefore take the liberty of quoting rather extensively from his opinion as follows:
“ * * * All the doctors found that plaintiff had partial impairment of the use of his right foot, ranging from 10% to 30%.
“The plaintiff testified that he had been working for the Hendrix Manufacturing C.ompany about eighteen years when he was injured. He was a welder’s helper. He was working in that part of the plant where drag-line buckets were welded. After the welder had made a weld, it was the duty of plaintiff to clean the slag off the weld with an air hammer. Defendant’s witnesses said the air hammers were cylindrical devices about eight to ten inches long with a handle at one end and a chipping chisel fitted into the other end; and that with the hose attached they weighed from seven to ten pounds. The trigger is built into the handle, and a little pressure will start it working. Plaintiff testified that in using the hammer, it was necessary to assume various positions, such as standing up, stooped over, squatted down, and sometimes on his knees. He was required to crawl into some of the buckets, and to climb a ladder to clean the slag off some buckets. The evidence indicates that plaintiff’s duties required him to assume many positions and postures, some of which necessarily required him to bend his toes. Plaintiff’s duties also required him, at times, to assist the welders in moving and turning the buckets to make the places to be welded accessible. He was required to keep a supply of rods on a ramp at the South end of the building. The boxes of rods weighed about fifty pounds. The floor of this building with the exception of the ramps at each end, was the bare ground
“At the trial plaintiff testified he was unable to do the work he was doing at the time of his injury. He described his foot and toes as being stiff and sore and on walking, particularly without a cane, his foot would swell and pain him severely. His wife, Ester Lee Pea, corroborated this testimony. She said when plaintiff has been on his feet since the accident, ‘he suffers awful with his foot’; and ‘It hurts and it swells and sometimes he would wash it in salty water trying to get it where he can rest at night’. This testimony is not inconsistent with the preponderance of the medical evidence. Although pain is largely a subjective symptom, I have no reason to doubt the plaintiff’s complaint of pain, especially when it is accompanied by demonstrable swelling of his foot. Too, plaintiff had worked for the same employer for 18 years; and there is no evidence that he had made any prior claim for compensation.
“It is my opinion that the restriction of motion in plaintiff’s toes and in the ball of his foot, together with the cocked-up second toe, caused by the subluxed second metatarsal phalangeal joint made it difficult to work over uneven surfaces, bend, stoop or climb a ladder or step over objects, or step from one height to another, or use his foot in balancing himself, to get a quick ‘pushoff’ in an emergency. The manner in which plaintiff was injured shows the necessity of his being agile *475 and able to move quickly with all possible speed.
“I conclude from a preponderance of the evidence, on the date of this trial that plaintiff was incapacitated to perform the same work or that of a similar character he was doing at the time of his injury, without working in pain, and without the hazards of his own safety being materially increased. The Court of Appeal, Second Circuit, in the case of Hunter v. Continental Casualty Co., La.App., 126 So.2d 394, very aptly said:
“ ‘It is well recognized in the jurisprudence of this State that the law does not expect, contemplate, or require that an employee, in order to earn a living, work in pain. Bran-non v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So. 2d 1, and the authorities cited therein.’ ”
Able counsel for appellant has cited Anderson v. Continental Can Company (La. App. 2 Cir., 1962), 141 So.2d 48 and Harris v. A. A. A. Foundation, Inc. (La.App. 4 Cir., 1962), 140 So.2d 696. In the Anderson case the court said:
“Where the employee was engaged in work at the time of his injury which consisted of multiple duties, the question of whether the injuries resulted in total and permanent disability must be decided by determining whether he can return to work and perform substantially all of such duties. If there are some duties incidental to his employment that he is unable to perform, the court then must decide whether such duties were a substantial part of his employment. * * * ”
The cited cases are not controlling herein because in our opinion the injury to Pea’s foot has disabled him from performing a substantial part of his employment.
The record discloses no manifest error in the judgment appealed from, either as to the facts or the law, and accordingly this court finds plaintiff totally and permanently disabled under our workmen’s compensation statute and the judgment appealed from is affirmed at appellant’s cost.
Affirmed.