150 So.2d 67 (1963)
Marion BOSS, Plaintiff and Appellee,
v.
MARQUETTE CASUALTY COMPANY et al., Defendants and Appellants.
No. 709.
Court of Appeal of Louisiana, Third Circuit.
January 28, 1963.
Rehearing Denied March 5, 1963.
Certiorari Refused April 17, 1963.
*68 Dubuisson & Dubuisson, by James G. Dubuisson, Opelousas, for defendants-appellants.
Simon & Trice, by J. Minos Simon and Phil Trice, Lafayette, for plaintiff-appellee.
Before FRUGÉ, HOOD, TATE, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
In this workmen's compensation suit plaintiff seeks judgment for weekly benefits at the rate of $35 per week for 400 weeks, less 93 weeks previously paid, plus penalties and attorney's fees and also for a doctor's bill and X-ray bill and a drugstore bill which defendant refused to pay. In the lower court, defendant first filed an exception of prematurity and an exception of no right or cause of action which were heard and overruled. After trial on the merits the lower court rendered judgment denying plaintiff's claim for weekly benefits, penalties and attorney's fees, on the grounds that plaintiff's suit for this relief was premature, but awarding plaintiff judgment for the amount of the X-ray bill, the drugstore bill and the doctor's bill. From this judgment defendant appealed. Plaintiff has answered the appeal seeking weekly compensation penalties and attorney's fees.
*69 In this court the defendant has moved that plaintiff's answer to the appeal be dismissed on the grounds that it was not timely filed within "fifteen days after the return day or the lodging of the record, whichever is later." in accordance with LSA-C.C.P. Article 2133. The record shows that the judgment appealed was rendered May 7, 1962. Defendant appealed and the return date was fixed for July 5, 1962. The plaintiff filed an answer to the appeal in this court on July 3, 1962, at which time the record had not yet been lodged here. The return date was extended by the lower court from July 5, 1962 to August 6, 1962 and the record was actually lodged in this court on August 1, 1962. Out of an abundance of precaution plaintiff filed a second answer to the appeal in this court on August 20, 1962, which was within fifteen days after the extended return date, but was more than fifteen days after the original return date. Defendant argues that the fifteen-day period provided by LS A-C.C.P. Article 2133 began to run on the original return date and not on the extended return date, no provision for any extended return date being made in the statute and that therefore the answer filed on August 20 was too late. We do not find it necessary to answer this argument because in any event the first answer to the appeal filed by the plaintiff in this court on July 3, 1962, was filed even in advance of the original return date and was timely filed and is sufficient even though the record had not yet been actually lodged here.
On the merits, the first issue is whether plaintiff is entitled to judgment for weekly compensation where, although defendant never expressly refused to pay compensation, it was late in making such payments many times, once as much as six weeks, several times as much as two weeks, and at the time of filing the instant suit, approximately three weeks late.
The facts on this issue show that the accident occurred on September 9, 1959 at which time plaintiff received a severe strain of the lower back aggravating a pre-existing condition known as spondylolisthesis, i. e., a displacement of a vertebra. Plaintiff was seen by Dr. Briley on September 11, 1959 and was hospitalized by this doctor from September 12, 1959 through September 19, 1959, at which time he was discharged with the suggestion that he try to return to light work. Being unable to do so, plaintiff was referred by Dr. Briley to Dr. Gilly, an orthopedic specialist, who reported to the defendant on October 8, 1959 that defendant was totally disabled. It was not until about October 28, 1959 that the defendant paid the first compensation check in the sum of $105 for the three weeks, September 18 through October 8. However, defendant did not continue to pay regularly. As of November 4, 1959, defendant had paid for only three of the eight weeks of disability, despite the fact that the medical reports showed total disability. On November 5, 1959 defendant finally forwarded a check for $175 for five weeks. It was on this same date that plaintiff filed his first suit in the lower court. Even after this first suit was filed defendant did not pay regularly and in fact paid nothing until February 20, 1960 when defendant paid $525 for the period November 6, 1959 through February 18, 1960. Defendants than began to pay compensation regularly every two weeks in the amount of $70 and subsequently filed an exception of prematurity in the first suit. This exception was argued and on November 17, 1960 was sustained by the lower court and plaintiff's first suit was dismissed. Although the plaintiff applied for a rehearing he did not appeal from the judgment in the first case.
Following the dismissal of plaintiff's first suit, the defendant was again late several times in making weekly compensation payments. Payment for the two-week period ending November 3, 1960 was not made until December 13, 1960 and thus was six weeks late. For the period ending December 1, 1960, payment was not made until December 13, 1960 and thus was two weeks late. On December 13, 1960 counsel for plaintiff wrote a letter to counsel for the *70 defendant complaining of the late payments and demanding that future payments be made on time. However, payment for the period ending December 27, 1960 was not made until January 5, 1961; payment for the period ending March 7, 1961 was not made until March 17, 1961, and payment for the period ending April 18, 1961 was not made until May 27, 1961. This second suit was filed on July 14, 1961 and on the next day, July 15, 1961, defendant forwarded a check to plaintiff's counsel in the sum of $70 covering compensation for the period June 14 through June 27, 1961, which means that this payment was approximately three weeks late at the time suit was filed.
The statutory basis for the exception of prematurity is LSA-R.S. 23:1314 which provides that a workmen's compensation claimant must allege and prove he is not being paid or has not been paid, and that the employer has refused to pay, the benefits due. If the plaintiff does not make and support these necessary allegations, then his petition may be dismissed as being premature.
In the instant case there has been no express refusal by defendant to pay compensation but the jurisprudence is now well settled that an express refusal is not necessary where there has been an implied refusal. Clark v. Forest Lumber Co., 9 La.App. 639, 120 So. 88; Hammett v. Cities Service Refining Corp., 216 La. 245, 43 So.2d 596. Although the defendant has never expressly refused to pay compensation it has persistently followed a practice of making the payments late, but always finally again became current and at the time of the hearing in the lower court was paying regularly and timely. The question is whether in this situation the plaintiff is entitled to bring suit and secure judgment fixing the extent of his disability and the amount of his weekly payments.
LSA-R.S. 23:1201 provides that compensation payments "shall be paid as near as may be, at the times and places as wages were payable to the injured employee before the accident". Plaintiff makes no objection that his workmen's compensation payments were made on a two-weeks basis, but he does object to these payments being consistently late.
We agree with the statement of law found in Malone, Louisiana Workmen's Compensation Law and Practice, 1951 Ed. page 490 as follows:
"Resumption of Compensation After Default
"In view of the language of Section 18.1(B) (LSA-R.S. 23:1314) it would appear that once the employer has defaulted, the employee should be entitled to maintain his action and secure a judgment fixing the extent of his disability and the terms upon which he shall be paid, even though the employer had resumed payments, including all arrears. However, it is likewise true that the employer, being entitled to postpone the beginning of compensation for a reasonable period pending a prompt investigation, should have the corresponding privilege of discontinuing compensation temporarily for the same purpose and under the same circumstances. It, therefore, appears that reasonableness of action in ceasing payment, promptness of resumption of payments, and the manifestation of a desire to cooperate should determine whether or not a prior default followed by a resumption of payment, including arrears, should entitle the employer to maintain his plea of prematurity."
The above concept of the law has been applied in several cases. In Dawson v. Barber Bros. Contracting Co., 195 So. 46 (1st Cir.App.1940) the defendant employer stopped paying compensation on receipt of a medical report that the plaintiff was able to resume work but, on receiving subsequent reports that plaintiff was disabled, resumed payments within about one month. The court held that the defendant had *71 acted reasonably and in good faith, and sustained its exception of prematurity.
In Fontenot v. Cox, 68 So.2d 656 (1st Cir. App.1953) compensation payments were suspended when it appeared that a compromise settlement would be reached, but were promptly resumed when a settlement failed. In sustaining a plea of prematurity the court held that plaintiff was not entitled to file suit "unless there was an unreasonable delay on the part of the defendant in not resuming his compensation payments after they had been temporarily suspended during negotiations".
In Graham v. Young, 43 So.2d 297 (2nd Cir.App.1949) an incorrect compensation rate was paid for several months but on learning of the error, defendant promptly paid the difference. The court held that the defendant acted reasonably and in good faith and sustained a plea of prematurity.
In Davis v. W. Horace Williams Co., 6 So.2d 168 (1st Cir.App.1942) plaintiff was injured on May 9, examined and found disabled by defendant's doctor on May 14, demanded compensation through his attorney on May 20, but, receiving no payments, filed suit about the last of May. The court held that defendant made no reasonable effort to pay compensation promptly and denied the exception of prematurity.
Under the law as set forth above we have concluded that defendant's persistent delays in making compensation payments amounted to an implied refusal to discharge its obligation under the Workmen's Compensation Law and entitled the plaintiff to institute these proceedings. As shown above, these delays amounted to as much as six weeks in one instance and to as much as two or three weeks in several instances. At the time this suit was filed defendant was delinquent by about three weeks. Even though these delays may not have been intentional, they were certainly sufficient that the plaintiff had a right to file this suit and request the court to determine by judgment his right to compensation payments. No reasonable justification has been made by defendant for the delays. The medical reports had consistently shown plaintiff to be disabled. There was no compromise settlement being negotiated nor was any further investigation being made. Defendant did not, after plaintiff objected to the delays, manifest a desire to cooperate by paying promptly.
The next issue is as regards defendants' refusal to pay certain medical expenses incurred by plaintiff. The record shows that after plaintiff was injured on September 9, 1959 he reported the accident to his employer who instructed plaintiff to contact defendant insurer's local agent for advice as to which doctor he should see. Plaintiff told the agent that Dr. DeBlanc was his family doctor but the agent instructed plaintiff he could go to any doctors plaintiff chose except Dr. DeBlanc. The agent recommended Dr. Briley. On September 11, 1959 plaintiff went to Dr. Briley who placed him in the hospital from September 12, 1959 through September 19, 1959, at which time he was discharged with the recommendation that he try to do light work. However, plaintiff returned to Dr. Briley on September 21, 1959, still complaining of back pain. Dr. Briley then referred plaintiff to Dr. Gilly, an orthopedic specialist. Plaintiff saw Dr. Gilly on October 5, 1959 and continued to see him at intervals thereafter for examination and treatment. Dr. Gilly diagnosed a severe back sprain superimposed on a pre-existing congenital defect called spondylolisthesis. Dr. Gilly did not think surgery would help. He prescribed conservative treatment consisting of a back brace and drugs for pain.
About October 2, 1959, on the recommendation of a relative, plaintiff went to see Dr. DesOrmeaux, who made the same diagnosis and treated plaintiff for about a month until this doctor suffered a heart attack.
It was on February 20, 1960 that plaintiff started seeing Dr. DeBlanc, who made *72 essentially the same diagnosis but, unlike Dr. Gilly, thought that surgery, rather than conservative treatment, was necessary. To relieve plaintiff's pain Dr. DeBlanc gave plaintiff shots, heat and ultrasonic treatments almost daily for several months, incurring a bill which at the time of trial was $629. In addition to this, the drugs prescribed by Dr. DeBlanc amounted to $122.88, and the x-ray ordered by him cost $45.
The applicable statute is LSA-R.S. 23:1203 which reads as follows:
"§ 1203. Medical expenses; duty to furnish
"The employer shall in every case coming under this Chapter furnish reasonable medical, surgical and hospital services and medicines or any non-medical treatment recognized by the laws of this state as legal not to exceed twenty-five hundred dollars in value, unless the employee refuses to allow them to be furnished by the employer. As amended Acts 1952, No. 322, § 1; Acts 1956, No. 282, § 1."
There is no contention made here that the employer has a primary right to choose the physician who will treat the employee for his injuries. The sole contention of defendant, as regards medical services, is that the employer is not liable for services rendered the employee by a certain named physician, when the employer has informed the employee, in advance of treatment furnished by this physician, that the employee can go to any doctor he chooses, except the named physician.
The present record shows that the employee went to three other physicians without obtaining relief before be reported to Dr. DeBlanc, who is also his own family physician, and that he thereafter obtained satisfaction under Dr. DeBlanc's treatment. There is no contention that the fees of Dr. DeBlanc were unreasonable or the treatment unnecessary.
Under these circumstances, we think that the employee is entitled to recover the expenses of treatment furnished to him by Dr. DeBlanc, as well as the cost of the drugs and X-ray which Dr. DeBlanc prescribed.
As regards penalties and attorney's fees, it is our opinion that the actions of the defendant in persistently paying weekly benefits late, were arbitrary, capricious and without reasonable cause. Under the circumstances, plaintiff is entitled to penalties and an attorney's fee in the sum of $1,500.
For the reasons assigned, the judgment appealed is affirmed in part, reversed in part and recast so as to provide as follows:
It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Marion Boss, and against the defendant, Marquette Casualty Company and Gilbert Joubert, d/b/a Plaisance Wholesale Grocery Company, jointly, severally and in solido for workmen's compensation at the rate of $35 per week during the period of disability for not exceeding 400 weeks, less the weekly compensation heretofore paid, with legal interest on each overdue payment from its due date until paid.
It is further ordered, adjudged and decreed that defendants pay plaintiff a penalty of 12% of all weekly compensation payments which are now overdue, or in the future become overdue for a period of 60 days, together with an attorney's fee payable to plaintiff in the sum of $1,500.
It is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff and against the defendants for the sum of $629 representing fees for professional services of Dr. D. J. DeBlanc, the sum of $122.88 for drugs prescribed by Dr. DeBlanc, and the sum of $45 for x-rays obtained on the request of Dr. DeBlanc.
It is further ordered that there be reserved to the plaintiff the right to claim any future medical expense as may be shown to be necessary and proper, the total of such medical expense which has been *73 or will be paid by the defendants not to exceed the statutory maximum of $2,500. All costs in the lower court, as well as the costs of this appeal, are assessed against the defendants.
Affirmed in part, reversed in part, and rendered.

On Application for Rehearing.
En Banc. Rehearing denied.