AYRES, Judge.
By this action plaintiff sought to recover, of his .employer’s insurer, workmen’s compensation .at the maximum statutory rate for total and permanent disability, as well as statutory penalties and attorney’s fees, less compensation previously paid. To plaintiff’s demands, defendant filed and successfully urged a plea of prematurity. From a judgment of dismissal of his action, predicated upon that ruling, plaintiff prosecutes this appeal.
The material facts upon which the plea of prematurity was predicated are uncon-tradicted. Plaintiff sustained an injury to his back on October 19, 1962, while lifting and loading rolls of roofing material in the course of his employment with defendant’s assured. He was immediately referred to Dr. C. H. McCuller under whose care he was treated until November 12, 1962, when he was referred by the doctor to Dr. Ray E. King, an orthopedist.
At the expiration of the second week of plaintiff’s disability, he was paid compensation for that week by defendant at the maximum statutory rate of $35. A like sum was paid at the end of the third, fourth, and fifth weeks. Under the statute, LSA-R.S. 23 :- 1224, no compensation is payable for the first week unless such disability continues for a period of six weeks or longer. On December 3, 1962, the date of the expiration of the fifth week of his disability, plaintiff was examined by Dr. King who found him able to resume his usual work, which finding was immediately reported verbally to defendant’s representative and, on December 5, 1962, confirmed by letter in which it was stated:
“This patient was advised that he can now return back to his regular work. In my opinion, he has recovered from the lumbar sprain.”
On the basis of this report, payment of compensation was discontinued.
The next event, in chronological order, was receipt by defendant of a letter on December 12, 1962, from Nasib Nader, an attorney of Shreveport, advising that he represented plaintiff and requesting copies of medical reports of Drs. McCuller and King. The reports were furnished as requested. Nader referred plaintiff to Dr, Robert T. Rounsaville, an orthopedist, for an examination and evaluation; on December 15, 1962, defendant’s representative received from Nader a copy of Dr. Rounsaville’s written report in which the doctor stated that he suspected plaintiff had sustained a ruptured disc, and had advised conservative treatment. Noted also was a desire to see plaintiff again in a week. In forwarding the doctor’s report, Nader’s communication contained this statement:
“I would rather try to settle this claim than to submit him for a myelo-gram or surgery. He has a large family to support and I do believe that a settlement would be for the mutual benefit of all of us.”
In accordance with the aforesaid suggestion, discussions for a settlement proceeded between Nader and defendant’s representative until January 7, 1963, when, in the presence of plaintiff, an agreement was reached for a compromise and settlement of plaintiff’s claims. Before a formal written agreement could be prepared and approval of the court obtained, Nader called defendant’s representative and requested that the *265 matter be held up until further notice. Thereafter, defendant, on January 11, 1963, received from Dr. McCuller, the initial treating physician, a letter stating that he had, on January 9th, discharged plaintiff from his care and treatment as being able to work.
Plaintiff’s present counsel advised defendant, on January 11, 1963, of the termination of employment of the former counsel and of their representation. In that communication it was suggested that plaintiff was unable to work and that he be again referred to Dr. King for further examination and reevaluation. This was done on January 14, 1963, following which Dr. King advised defendant that, based on his examination of that day, it was suspected plaintiff might have a ruptured disc. To assist in his diagnosis, a myelogram was recommended. Plaintiff was to return within a week for that test. Dr. King’s report was reduced to writing and mailed to defendant’s representative on January 19, 1963. In the meantime, on January 16th, plaintiff’s present counsel instituted this action.
Under Dr. King’s care, plaintiff was placed in a hospital on January 21, 1963, where, on the following day, a myelogram was performed. This test confirmed the suspicion of a ruptured disc. Surgery was recommended, the expense of which defendant advised it would pay. On the same day, counsel were advised that compensation would be paid to date and thereafter payment would be made weekly during plaintiff’s disability following surgery. Draft in payment of the compensation due was forwarded the next day to plaintiff’s counsel. The draft was rejected and returned. Thereafter, upon its preparation, a plea of prematurity was filed January 29, 1963, accompanied by a deposit in the registry of the court of the sum of $316.33, which included all past-due compensation as well as legal interest on each of the past-due installments ; accrued court cost in the additional amount of $18.60 was also included in the deposit.
The statutory rule in effect is that, unless a petition for workmen’s compensation alleges that the employee is not being or has not been paid, and that the employer has refused to pay compensation at the maximum rate to which the employee is entitled, or where such facts are alleged but shown to be without reasonable cause or foundation in fact, the action must be dismissed as premature. LSA-R.S. 23:1314.
The defendant was fully warranted in discontinuing the payment of compensation on receipt of Dr. King’s report that plaintiff had recovered from his injuries and was able to resume the duties of his employment. It was not incumbent on defendant to resume payment of compensation on a basis of Dr. Rounsaville’s report indicating only a possibility of a ruptured disc, in view of the fact it is not contended that the report indicated plaintiff was disabled, and in view of the further fact, as heretofore observed, there accompanied the doctor’s report counsel’s suggestion of a compromise which, after negotiations, was agreed upon although never consummated.
Plaintiff’s present counsel, as has already been pointed out, suggested that their client be resubmitted to Dr. King for reevaluation. Before the completion of this examination and confirmation of his prior finding of evidence indicative of a herniated disc, plaintiff’s counsel, without notice to defendant, instituted this action. Thus, no opportunity was afforded defendant to pay compensation, or even to elect or refuse to pay compensation, predicated upon the anticipated diagnosis of Dr. King. When informed of the facts disclosed by Dr. King’s examination, defendant readily conceded plaintiff’s total disability and entitlement to compensation, and offered to pay all past-due compensation, with interest, and all future compensation as it came due.
A similar situation arose in Dawson v. Barber Bros. Contracting Co., La.App. 1st Cir., 1940, 195 So. 46. There the defendant had stopped compensation payments to a workman when it was informed by its *266 physician that the employee had recovered to the extent that he was able to resume his work. Plaintiff then consulted an attorney between whom and a representative of the employer’s insurer, a conference was held in which it was agreed that further examinations would be made as well as a reevaluation of plaintiff’s disability. While awaiting the results of the examination to be made known, the suit was filed. The examination disclosed that plaintiff was still disabled. Appropriate to the facts of the instant case are the observations made wherein the court stated:
“The defendants never disputed the fact that plaintiff had been injured and conceded their liability at once by paying him compensation. Acting in good faith on the report of the examining physician that he was able, after a few weeks, to resume work, they discontinued the payments but readily agreed to a re-examination after further claim was made on them. Plaintiff’s counsel strenuously urges that he did not agree with the adjuster of the insurance company who was handling the claim, to withhold filing suit pending the re-examination of his client but he admits that he told him that he would furnish him with a report of the examination from which promise, as it were, the insurance company could properly have implied that the matter would be held in abeyance until such report was received by it. Finally, after suit had been filed and it came in possession •of the report which showed existing •disability, the insurance company, without further controversy, offered to resume payments which included the difference that was due plaintiff between what he had received as compensation based on a thirty-six hour week and what he really was entitled to on the basis of a forty hour week, which ■error, incidentally, seems to have been •discovered and attention directed to, by it. The offer and tender also included interest on all back payments and the costs of suit so far incurred. There was no undue delay, as far as we can see, and we are at a loss to understand what more it could reasonably have been expected to do.
* * * * * *
“It is our opinion that where an employer, acting in perfect good faith on the advice or report of a reputable physician, who, as in this case, we have every reason to believe is eminently qualified, to the effect that an injured employee is able to resume work, stops paying him compensation, but on subsequent advice learns that an error has been committed, and then without unreasonable delay resumes payment and restores compensation to its original status, it should not be made to defend a suit, the result of which could only be to judicially declare that it must do what it actually is doing. To spare the trouble and expense incidental to a law suit under such circumstances is, we believe, the purpose of the sub-section of the compensation statute here under consideration which provides for its dismissal on a plea of prematurity.”
It is well recognized in the jurisprudence that a plaintiff is not entitled to institute an action for workmen’s compensation unless he is not being paid compensation as required by the statute and unless there was an unreasonable delay on the part of the employer or of the insurer in not resuming payments after they had been temporarily suspended during negotiations, particularly where there was no refusal to pay and no denial of liability. Suits filed under such conditions were held premature. Dawson v. Barber Bros. Contracting Co., supra; Graham v. Young, La.App.2d Cir., 1949, 43 3o.2d 297; Fontenot v. Cox, La.App. 1st Cir., 1953, 68 So.2d 656 (writ denied); Glover v. Schuylkill Products Company, La.App. 1st Cir., 1962, 138 So.2d 15 (writ denied). *267 The rule was recently recognized, although the plea was overruled because of the unreasonable delay in the resumption of the payment of compensation, in the case of Pea v. Hardware Mutual Casualty Company, La.App. 2d Cir., 1962, 147 So.2d 472.
In the Dawson case, the resumption of compensation payments was permitted more than a month after they were suspended. In the instant case, resumption of payment of compensation was tendered immediately on receipt of the orthopedist’s report that plaintiff indeed had a ruptured disc and was disabled.
The delay in the preparation of the plea of prematurity and the making of formal tender and deposit in the registry of the court until January 29, 1963, under the circumstances of this case, did not constitute an undue delay.
No contention is made that any demand, formal or otherwise, for the payment of compensation must be first made by an employee as a prerequisite to secure compensation due him. Such a contention was made in D’Antoni v. Employers’ Liability Assur. Corporation, 213 La. 67, 34 So.2d 378, and held without merit. A failure to pay compensation when due, under the circumstances disclosed in Duke v. Remington Rand, Inc., La.App. 2d Cir., 1959, 111 So.2d 157 (writ denied), and an indication by the employer that it does not concede liability, under the circumstances disclosed in Hammett v. Cities Service Refining Corporation, 216 La. 245, 43 So.2d 596, were held equivalent to a legal refusal to pay compensation, making inappropriate pleas of prematurity.
No such circumstances exist in the instant case. Here, on competent medical advice, compensation was discontinued. The question here is the reasonableness of the actions of the defendant in meeting its responsibility. After the insurer was advised, on January 14, 1963, that Dr. King suspected there might be a ruptured disc involved, and recommended a myelo-gram to be made a week later, the question is: Was plaintiff’s action in instituting this suit on January 16, 1963, premature? Obviously, plaintiff, on learning the contents of a proposed report not reduced to writing until January 19, 1963, caused to be prepared and filed this suit, within 48 hours, without waiting to determine what the insurer would do or what action it would take as a result of the examination. From the facts disclosed by this record, the question must be answered in the affirmative. Nor do we find anything indicating that defendant’s actions were unreasonable or capricious, or that an unreasonable delay transpired before the resumption of the payment of compensation.
The plea of prematurity was, therefore, in our opinion, properly sustained. The judgment appealed is accordingly affirmed at plaintiff-appellant’s cost.
Affirmed.